ON APPLICATION FOR REHEARING
The opinion of this Court issued March 29, 1991, is hereby set aside. The following becomes the opinion of this Court.
Robert F. Inmon was charged, in Count I of a two-count indictment, with sexual abuse in the second degree, a Class A misdemeanor under Ala. Code 1975, § 13A-6-67(a)(2), and in Count II, with taking an obscene photograph of a person under the age of 17 years, a Class A felony under § 13A-12-197. He was acquitted of the offense charged in Count II, was convicted of the crime alleged in Count I, and was sentenced to one year's imprisonment in the Mobile County jail. He raises eight issues on this appeal from that conviction.
L.A.R. testified that in July 1984, she was 12 years old, and her mother married the defendant. A few months after the marriage, the defendant began entering L.A.R.'s room in the middle of the night, moving her night clothes aside, and touching her vagina with his hand. According to L.A.R., on at least one of these occasions, the defendant took a photograph of her pubic area. The defendant continued this activity about three times a week until the last time, in November 1985. During all of these encounters, L.A.R. pretended to be asleep and did not speak to the defendant. On the last occasion, L.A.R.'s mother saw the defendant leaving her daughter's room and began screaming at the defendant. L.A.R. covered her head with a pillow and went back to sleep. The next morning, L.A.R. went to her grandmother's house.
On November 19, 1985, L.A.R.'s grandmother took the child to Dr. Dan Sullivan, the family pediatrician, "to determine whether or not she had been abused sexually." L.A.R. stayed with her grandmother *Page 263 
for two weeks and then returned to the home of her mother and stepfather, the defendant. After she came home, L.A.R. locked her door every night, and the defendant's previous activity did not reoccur. L.A.R. continued to live with her mother and the defendant until she was 18 years old, which was shortly before the time of the trial in this case.
 I
The defendant argues that Count I of the indictment failed to state an offense because it omitted an essential element of the crime of sexual abuse, the intent with which the act was committed.
The defendant is correct that intent is an essential element of the offense of sexual abuse. See McGahee v. State,554 So.2d 454, 465 (Ala.Cr.App.), affirmed, 554 So.2d 473 (Ala. 1989);Nails v. State, 549 So.2d 572, 574 (Ala.Cr.App. 1989); Hawkinsv. State, 549 So.2d 552, 555 (Ala.Cr.App. 1989); Phillips v.State, 505 So.2d 1075, 1078 (Ala.Cr.App. 1986); Pierce v.State, 484 So.2d 506, 509 (Ala.Cr.App. 1985); Parker v. State,406 So.2d 1036, 1039 (Ala.Cr.App.), cert. denied,406 So.2d 1041 (Ala. 1981). Sexual abuse "requires proof that the defendant acted with the intent to gratify the sexual desires of himself or the prosecutrix." Ex parte Cofer, 440 So.2d 1121,1124 (Ala. 1983).
Generally, "[a]n indictment is sufficient which substantially follows the language of the statute, provided the statute prescribes with definiteness the constituents of the offense."Ex parte Allred, 393 So.2d 1030, 1032 (Ala. 1980), quoted inCopeland v. State, 456 So.2d 1150, 1151 (Ala.Cr.App. 1984).
 "To avoid omitting a crucial element of the offense, prosecutors frequently draft pleadings that track the language of the criminal provision. . . . Reliance upon the statutory language will be acceptable, however, only if 'the words of [the statute] themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense. If the statute omits an essential element, such as mens rea, then that element must be added to the pleading.' "
2 W. LaFave J. Israel, Criminal Procedure § 19.2(c) at 452 (1984) (footnotes omitted) (quoting Hamling v. United States,418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)).
This indictment, by charging that the defendant "did knowingly subject L.A.R. to sexual contact," tracked the language of § 13A-6-67. Although the indictment did not explicitly allege the intent element of the offense, it did not "omit" the intent component of the charged offense. That component was encompassed in the term "sexual contact," defined in the definitional section for "Sexual Offenses" as follows:
 "SEXUAL CONTACT. Any touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party."
Ala. Code 1975, § 13A-6-60(3).
In Pierce v. State, 484 So.2d 506 (Ala.Cr.App. 1985), this court observed:
 "Although the intent to gratify the sexual desire of either party is an element of sexual abuse, it is not explicitly alleged in the indictment. Rather it is encompassed in the definition of 'sexual contact': 'Any touching of the sexual or other intimate parts of a person not married to the actor, done for [the] purpose of gratifying the sexual desire of either party.' "
484 So.2d at 509 (emphasis in original) (citations omitted).
This Court reversed a conviction for sexual abuse inPierce because we found the accused's guilty plea involuntary. We determined that the record affirmatively showed that the accused did not understand the elements of the offense to which he was pleading guilty because a simple reading of the indictment did not put him on notice of the nature of the charge against him. In Pierce, the accused admitted that "while hugging his daughter he touched her breasts without any sexual *Page 264 intent." 484 So.2d at 510 (emphasis added).
Pierce holds that a mere reading of the indictment cannot establish a factual basis for a plea to sexual abuse when the accused disclaims criminal intent. It does not stand for the proposition that an indictment for sexual abuse which tracks the language of the statute and incorporates the intent element in a "word or phrase defined by law" is insufficient.
 "The words used in an indictment must be construed in their usual acceptation in common language, except words and phrases defined by law, which must be construed according to their legal meanings."
Ala. Code 1975, § 15-8-5 (emphasis added). Since "sexual contact" is "defined by law" to encompass the intent element required for sexual abuse, its use in an indictment is legally sufficient to charge the offense. If that were not the case, there would have been no need to determine the voluntariness of the plea in Pierce; the plea, even if voluntary, would have been invalid because it rested on a void indictment. "Where an indictment is void and does not charge an offense, this Court is bound to take notice of such a defect." Barbee v. State,417 So.2d 611, 613 (Ala.Cr.App. 1982).
The defendant's motion to dismiss the indictment on the ground that it failed to state an offense was properly denied.
 II
The defendant argues that the court erroneously denied his motion to dismiss Count II of the indictment because it failed to allege the date on which he took the obscene photograph. He also argues that the court erred by denying his motion for severance of counts in the indictment, since without the date of the offense alleged in Count II there was no showing that the obscenity and sexual abuse offenses were connected in their commission and thus properly joined.
The defendant acknowledges that the date on which an offense occurred need not be alleged in the "indictment unless time is a material ingredient of the offense." Ala. Code 1975, §15-8-30. However, he maintains that time was material here because the four-year delay between the offense and the indictment hampered the presentation of his defense. This argument is moot since the jury acquitted the defendant of the offense charged in Count II. "Only the count upon which appellant was found guilty is subject to appellate review."Hammond v. State, 354 So.2d 280, 284 (Ala.Cr.App.), cert. quashed, 354 So.2d 294 (Ala. 1977), cert. denied, 439 U.S. 823,99 S.Ct. 91, 58 L.Ed.2d 115 (1978).
Here, the offenses of sexual abuse and taking an obscene photograph were connected, and their joinder was authorized based on L.A.R.'s testimony that on at least one of the occasions when the defendant touched her vagina, he also photographed that portion of her body. The acts underlying the two counts of the indictment were, therefore, of a "similar character[,] or . . . based on the same conduct or . . . otherwise connected in their commission." Rule 15.3(a)(i) and (ii), Ala.R.Crim.P.Temp. (now Rule 13.3(a)(1) and (2), A.R.Cr.P.). See Perry v. State, 568 So.2d 339, 342 (Ala.Cr.App. 1990) (consolidation of indictments for sexual abuse pursuant to § 13A-6-67, and for production of obscene matter pursuant to § 13A-12-196, proper when evidence established that "the sexual abuse occurred 'one time after the pictures had started' ").
 III
L.A.R.'s testimony that the defendant subjected her to sexual abuse approximately three times a week, beginning several months after his marriage to her mother in July 1984 and continuing until November 1985, was admissible. In Bowden v.State, 538 So.2d 1226 (Ala. 1988), our supreme court held that "evidence establishing that [defendant] . . . committed acts of sexual abuse toward [the victim] prior to or subsequent to the offense for which he is charged, is admissible to prove hismotive in committing the charged offense." 538 So.2d at 1235
(emphasis in original). *Page 265 
 " '[I]n a carnal knowledge case, the prosecution may introduce proof of sexual relations between the accused and the prosecutrix before and after the act on which the prosecution is based. . . . The reason behind the admissibility of such acts was discussed by Mr. Justice Brown in Harrison v. State, 235 Ala. 1, 2, 178 So. 458, 459 (1937):
 " ' "[w]e hold that the weight of authority sustains the proposition that it is permissible for the prosecutors to offer evidence of such acts occurring before and after the alleged act on which the indictment is based, as tending to sustain the principal charge by showing the relation and intimacy of the parties." ' "
Bowden, 538 So.2d at 1234-35 (quoting Deason v. State,363 So.2d 1001, 1005 (Ala. 1978) (emphasis added by the court inBowden).
 IV
The following notation on a medical record from the files of Dr. Dan Sullivan was admitted into evidence:
 "[L.A.R.] c[omplained] o[f] molested at night by stepfather, grandmother present when they talked about lock on door."
The defendant objected to the document on the ground that it denied him the right to confront and cross-examine Dr. Sullivan, who had made the notation and who was deceased at the time of trial; that it had "no probative value"; and that it was "prejudicial." Although counsel now claims on appeal that the report should have been excluded because it contained hearsay, that ground was not asserted below.
Nevertheless, "hearsay rules and the Confrontation Clause are generally designed to protect similar values," California v.Green, 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489
(1970), and the Supreme Court has established the following " 'general approach' for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause":
 "[T]he Confrontation Clause 'operates in two separate ways to restrict the range of admissible hearsay.' 'First, . . . the Sixth Amendment establishes a rule of necessity. In the usual case . . ., the prosecution must either produce or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.' . . . Second, once a witness is shown to be unavailable, 'his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.' "
Idaho v. Wright, 497 U.S. ___, ___, 110 S.Ct. 3139, 3146,111 L.Ed.2d 638 (1990) (quoting Ohio v. Roberts, 448 U.S. 56,65-66, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980)). See alsoFortner v. State, 582 So.2d 581 (Ala.Cr.App. 1990).
Following the analytical framework established by the Supreme Court, we conclude that the defendant was not denied his right to confront and cross-examine Dr. Sullivan. First, the deceased physician was unavailable. Second, a victim's complaint that she has been sexually abused is a "firmly rooted" exception to the hearsay rule. See 4 J. Wigmore, Evidence §§ 1134-40 (Chadbourn rev. 1972); C. Gamble, McElroy's Alabama Evidence § 178.01 (3d ed. 1977).
The general rule is that "testimony regarding a prosecutrix's complaint . . . must be confined to the mere showing that a complaint was made [and] [d]etails of the occurrence are not admissible." Lee v. State, 565 So.2d 1153, 1154 (Ala. 1989). The "details" of a victim's complaint include the "identification of the person accused." Biggs v. State,331 So.2d 763, 764 (Ala.Cr.App.), cert. denied, 331 So.2d 765 (Ala. 1976). The general rule, however, is subject to the exception that if the victim "has been subjected to cross-examination calculated to reflect upon her credibility as *Page 266 
a witness," the details of her complaint are admissible for the purpose of corroborating her testimony on direct examination.Lee v. State, 565 So.2d at 1154, quoted in Parker v. State,581 So.2d 1211, 1215 (Ala.Cr.App. 1990) and Weaver v. State,568 So.2d 309, 311 (Ala.Cr.App. 1989). See also 4 Wigmore,Evidence, supra, at § 1138. Here, defense counsel's cross-examination of L.A.R. was calculated to reflect on her credibility as a witness and brought into play the exception to the general rule authorizing the admission of the details of L.A.R.'s complaint to Dr. Sullivan. V
Dr. James Lloyd Thomas, a specialist in adolescent psychiatry, testified that L.A.R. reported to him that when she was in the fifth grade she had been sexually abused by a babysitter. This incident was unrelated to the facts giving rise to the instant prosecution. The defendant argues that Dr. Thomas was erroneously allowed to give his opinion on the ultimate fact in issue. The following occurred at trial:
 "Q [By the prosecutor]: Doctor was [L.A.R.] making up a tall story, first of all, about the abuse that occurred, as she described to you, in the fifth grade?
 "[Defense counsel]: Judge, I object to the question. If you search the function of the jury, to determine the credibility of the witness herself, the jury can make the determination whether or not [L.A.R.] told the truth about the incident or whether she fantasized about it. It invades their province.
 "THE COURT: Overruled. Go ahead. Just do you have an opinion on that topic, yea or nay?
"THE WITNESS: I do have an opinion.
"Q [By the prosecutor]: And what is that opinion?
"[Defense counsel]: Same objection, Judge.
"THE COURT: The same ruling. Go ahead.
 "A My opinion is that she was telling the truth about the abuse.
 "Q Do you have an opinion as to whether or not she was telling a tall tale with regard to the abuse she described to you with [the defendant]?
"[Defense counsel]: Same objection, Judge.
"THE COURT: Sustain the objection."
The "ultimate fact" in issue here was whether the defendant abused L.A.R. As the foregoing exchange illustrates, Dr. Thomas was not allowed to give his opinion on that issue. The psychiatrist stated only that he believed L.A.R.'s report of abuse by the babysitter. The babysitter's alleged abuse, far from being the "ultimate" fact in issue, was not in issue at all.
We recognize that L.A.R.'s truthful reporting of abuse by the babysitter could have led to the permissible inference that if she was honest about one report of abuse, she would likely be honest about another. Testimony pointing to such an inference does tend to invade the province of the jury. However, based on all the evidence in this case and considering the entire record, we cannot say that the admission of the psychiatrist's testimony on this point was reversible error. We simply do not believe that, when examined in the context of the entire case, this testimony, which only inferentially touched on the "ultimate issue" was prejudicial to the defendant's substantial rights.
In addition, this Court has followed the modern trend of allowing expert testimony in child sexual abuse cases notwithstanding the fact that the testimony encroaches on the function of the jury, if the evidence assists the jury in resolving a matter beyond the knowledge of the average juror. See, e.g., Sexton v. State, 529 So.2d 1041, 1049-50
(Ala.Cr.App. 1988).
 "With 'near unanimity' courts have recognized that this type of expert testimony can assist the jury in understanding the evidence introduced in child sexual assault cases. State v. Catsam, 148 Vt. 366, 534 A.2d 184, 187 (1987), and cases cited therein. See also Mims v. State, 500 So.2d 100
(Ala.Cr.App. 1986); Allen v. State, 472 So.2d 1122
(Ala.Cr.App. 1985); State v. Gray, 533 So.2d 1242 *Page 267 
(La.Ct.App. 1988); State v. Patrick, 513 So.2d 449 (La.Ct.App. 1987); Stephens v. State, 774 P.2d 60 (Wyo. 1989). See generally Moss v. State, 545 So.2d 230 (Ala.Cr.App. 1989); Sasser v. State, 494 So.2d 857 (Ala.Cr.App. 1986)."
Lee v. State, 565 So.2d 1155, 1156 (Ala.Cr.App. 1990) (on remand). Our holdings in these cases have implicitly recognized that the average juror is not likely to be conversant with the physiological and psychological symptoms of sexual abuse, the presence or absence of which would lead an expert to credit or discredit a report of abuse.
"The general rule is that '[t]he criterion for admission of expert testimony is that the witness, by study, practice, experience, or observation as to the particular subject, should have acquired a knowledge beyond that of ordinary witnesses.' " Bird v. State, [Ms. 3 Div. 938, February 23, 1990] ___ So.2d ___, ___ (Ala.Cr.App. 1990) (quoting White v. State, 294 Ala. 265,271, 314 So.2d 857, 862, cert. denied, 423 U.S. 951,96 S.Ct. 373, 46 L.Ed.2d 288 (1975)). In light of Dr. Thomas's testimony that he had been practicing adolescent psychiatry for 16 years, had worked with 400-500 sexually abused children, and had become "familiar with the patterns and symptoms of a child who has been sexually abused," the trial court acted within its discretion in determining that the psychiatrist's testimony "enlightened the jury in an area beyond the average lay person's knowledge and assisted it in arriving at the truth."Lee v. State, 565 So.2d at 1156.
 VI
After deliberating for some time, the jury asked for a redefinition of "reasonable doubt." In a thorough supplemental instruction comprising eight pages of the trial record, the court redefined, explained, and gave examples of what might constitute reasonable doubt. The following portion of the charge comprised approximately two of the eight pages of the supplemental instruction:
 "Another thing you might do is this: When you are trying to decide whether the state has proved the case beyond a reasonable doubt, ask yourself, 'How would the average reasonable member of the community look at exactly the evidence that you all are looking at?' In other words, try to step outside your own bodies for a minute and think of somebody that you view as an average reasonable member of our community. And think well, 'Well, how would that person react? How would that person assess all of this testimony and all of these exhibits? Would all of this testimony and all these exhibits convince that person beyond a reasonable doubt of the defendant's guilt.' Because, if so, perhaps the state has proved the case beyond a reasonable doubt. On the other hand, if the person that you envision as the average reasonable person of the community, being exposed to exactly this testimony and exactly to these exhibits, would think, well, gosh, one reasonable thing that could have happened would be this, this, and this under which circumstance the defendant wouldn't be guilty. In other words, if the average person that you are thinking about, an average reasonable person would see some explanation of the evidence under which the defendant wouldn't be guilty, that the state had not, in effect, disproved, then perhaps there is a reasonable doubt. But try to just as a way of approaching your own feelings and kind of evaluating the evidence objectively, ask yourselves, 'Well, how would an average reasonable person in our community assess this?' . . . . When I talk about asking yourselves how an average reasonable member of our community would look at the evidence, that's one way of helping you realize that there is no loss of face in realizing that another view of the case is correct, if, in fact, by asking yourself, well, how would the average reasonable person in the community assess this evidence, if by doing that you realize that assessment might be different from what I am thinking about. There is nothing wrong with that. You are not losing face. You are analyzing. That's powerful brain work."
At trial, the defendant objected to the foregoing instruction on the ground that "there is no standard by which to measure how the average reasonable member of the *Page 268 
community would view the evidence." On appeal, the defendant argues that the court applied the wrong standard. He claims that the court's charge erroneously instructed the jury to use a local (Mobile County) standard instead of a statewide standard for "the average reasonable person in the community."
The ground of objection raised on appeal is not the same as that raised at trial. Furthermore, the court's instruction did not use Mobile County as the yardstick for reasonableness; it employed the terms "our community" or "the community," which, by operation of law in some contexts, import statewide standards. See, e.g., Pierce v. State, 292 Ala. 473, 479,296 So.2d 218, 223 (1974), cert. denied, 419 U.S. 1130,95 S.Ct. 816, 42 L.Ed.2d 830 (1975) ("community" standards for determining obscenity are statewide).
The unorthodox instruction, even if erroneous, was harmless to the defendant in light of the comprehensive explanation of reasonable doubt which preceded it. "The rule is well established that where a portion of the oral charge is erroneous, the whole charge may be looked to and the entire charge must be construed together to see if there be reversible error." Gosa v. State, 273 Ala. 346, 350, 139 So.2d 321, 324
(1961). " 'An instruction explanatory of another charge should be considered in connection therewith; and if, when considered together, they assert a correct proposition, the judgment will not be reversed. . . .' Johnson v. State, 81 Ala. 54,1 So. 573, 574 (1886)." Williams v. State, 538 So.2d 1250, 1252
(Ala.Cr.App. 1988). This "reasonable person in the community" instruction, "when read with the surrounding remarks by the court, was not prejudicial and did not warrant a reversal." SeeMorrison v. State, 398 So.2d 730, 746 (Ala.Cr.App. 1979), reversed on other grounds, 398 So.2d 751 (Ala. 1981).
 VII
The defendant maintains that the verdict acquitting him of photographing his stepdaughter's private parts is incompatible with the verdict convicting him of touching her private parts, when she testified that he did both. He claims that his post-verdict motion for judgment of acquittal should have been granted because the jury verdicts are inconsistent.
A defendant convicted by a jury on one count cannot attack that conviction on the ground that it is inconsistent with the jury's verdict of acquittal on another count. Dunn v. UnitedStates, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932).
 "The general rule is that there need be no rational compatibility or consistency between the verdicts on the several counts of an indictment. The exception to this rule is where the jury returns multiple convictions as to crimes which are mutually exclusive of each other. Conway v. State, 489 So.2d 641, 642 (Ala.Cr.App. 1986) (Verdicts of not guilty of kidnapping and guilty of felony-murder were mutually exclusive. Verdicts of not guilty of intentional murder but guilty of manslaughter and guilty of felony-murder were not mutually exclusive.). See also Smelcher v. State, 520 So.2d 229, 232 (Ala.Cr.App. 1987) (verdicts of guilty of rape but not guilty of sodomy [when victim testified that defendant raped and sodomized her] not inconsistent); Oden v. State, 41 Ala. App. 212, 215, 127 So.2d 380 (1961) ('On review we cannot treat the two counts as charging an indivisible crime or even yoked offenses.' No error found because of a conviction for making or distilling alcoholic liquors and acquittal for possession of a still.)."
Grikis v. State, 552 So.2d 187 (Ala.Cr.App. 1989) (brackets added).
The judgment of the circuit court is affirmed.
ORIGINAL OPINION WITHDRAWN;
OPINION SUBSTITUTED;
MOTION DENIED;
APPLICATION FOR REHEARING
OVERRULED;
AFFIRMED.
All Judges concur. *Page 788