[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 658 
 On Return to Remand
The appellant, Raymond Lewis Schaefer, was indicted for two offenses: sodomy in the first degree, see Code of Alabama 1975, § 13A-6-63 (engaging in deviate sexual intercourse with D.L.F., a child less that 12 years of age, when the appellant was over 16 years of age), and sexual abuse in the first degree, see §13A-6-66 (engaging in sexual contact with D.L.F.). The cases were consolidated, and after a jury trial, the appellant was found guilty in both cases as charged in the indictments. He was sentenced to 25 years' imprisonment on the sodomy conviction and to 5 years' imprisonment on the sexual abuse conviction. He was also ordered to pay restitution.
The state's evidence showed that the appellant, who was divorced from D.L.F.'s mother at the time of the incidents forming the bases of the charges, engaged in sexual activity with D.L.F. on several occasions. This activity consisted of mutual masturbation and fellatio, performed while the appellant and D.L.F. were watching pornographic films. The sexual activity came to light when D.L.F. was observed performing similar acts on a younger boy, and, when confronted, he stated that the appellant had done those same things to him. A pornographic film, which contained scenes that had been described by D.L.F., was found in the appellant's residence. *Page 659 
The appellant's defense consisted of a denial of the charges and of attempts to discredit the testimony of D.L.F. He does not question the sufficiency of the evidence to support the convictions. He appeals, raising nine issues. On original submission, we remanded, in regard to the issue discussed in Parts IV and V, infra, for the trial court to conduct an in camera examination of D.L.F.'s psychiatric records and the records in the files of the Alabama Department of Human Resources pertaining to D.L.F. Schaefer v. State, 676 So.2d 947
(Ala.Cr.App. 1995). The trial court has complied with our instructions.
 I.
The appellant first contends that the trial court committed reversible error in allowing a social worker to testify to the alleged ultimate issue in the case, i.e., whether the child, D.L.F., was telling the truth about the sexual abuse. The record in this regard shows the following:
 "Q. [MR. SMITH, prosecutor]: Major Green, did you have occasion to become acquainted with [D.L.F.]?
"A. [WITNESS]: Yes, sir.
"Q. And how did you come to know [D.L.F.]?
 "A. His mother brought him into mental health at Lyster Hospital in November of 1991 with a complaint of sexual abuse, words to the effect that Raymond Schaefer had molested him.
"Q. Did you [have] occasion to interview [D.L.F.]?
"A. Yes, I did.
 "Q. On how many occasions did you talk with [D.L.F.]?
 "A. I would say in the neighborhood of about an hour.
 "Q. Would you relate to the jury what those impressions were, please?
 "MR. TURBERVILLE [defense counsel]: We object, Your Honor.
"THE COURT: Overruled.
"Q. What were your impressions?
 "A. My impression was that he had been sexually molested. He seemed to be credible.
 "Q. In your professional opinion, do you believe [D.L.F.] was telling the truth?
 "MR. TURBERVILLE: I would object to that. That invades the province of the jury. This witness has no qualifications to make that determination.
"THE COURT: Objection overruled.
"MR. TURBERVILLE: We ask for a mistrial.
"THE COURT: Motion for a mistrial is denied.
"Q. After interviewing [D.L.F.], what did you do?
"A. I referred him to Dr. Nolan.
"Q. Would you tell the jury who Dr. Nolan is?
"A. He works part-time at our clinic.
"Q. And did he [go] to Dr. Nolan?
"A. Yes, he did.
 "Q. Now, in your counseling with [D.L.F.] did he describe what had been done to him?
"A. Yes, he did.
"MR. TURBERVILLE: We object as being hearsay.
"THE COURT: Overruled.
 "Q. Was he able to identify the person that had done this?
"A. Yes.
"Q. And was that Mr. Schaefer?
"A. Yes, sir.
 "Q. Now you made the assessment that he was credible. Would you tell how [you] came to that conclusion?
"A. Okay, he did not seem to be rehearsed."
(Emphasis added.)
The record reflects that the issue now raised on appeal was not properly preserved for our review by timely objection and an adverse ruling. When the prosecutor asked the witness to relate his "impressions" gained from his interviews with D.L.F., defense counsel's objection was general and stated no grounds. This was insufficient to preserve for review the question of whether the witness's testimony that D.L.F. seemed credible invaded the province of the jury. A general objection that does not specify any *Page 660 
grounds generally will preserve nothing for review. Whitley v.State, 607 So.2d 354 (Ala.Cr.App. 1992).
Moreover, we note that when the prosecutor asked the witness if he believed that D.L.F. was telling the truth, an objection was made and was overruled; however, the question was never answered. The prosecutor did not insist on an answer, and he abandoned the question. Thus, no error or injury to the appellant occurred even if the ruling had been erroneous because the question was never answered by the witness. We find likewise in regard to the appellant's motion for a mistrial. The prosecutor then asked the witness how he came to the conclusion that D.L.F. was credible. Here, no objection was made, and the witness testified that D.L.F. "did not seem to be rehearsed." Thus, the issue now raised on appeal was not preserved for review by proper objection.
The state argues, in the alternative, that even if the issue was preserved, the testimony of the expert witness would have been admissible even though it dealt with the ultimate fact in issue to be decided by the jury, i.e., whether to believe the child victim or the appellant. In support of its argument, the state cites Inmon v. State, 585 So.2d 261 (Ala.Cr.App. 1991), which discussed the modern trend, which Alabama follows, of allowing expert testimony in child sexual abuse cases, notwithstanding the fact that the testimony encroaches on the function of the jury, if the testimony assists the jury in resolving a matter beyond the knowledge of the average juror. Because this issue was clearly not preserved for review, we deem it unnecessary to address the state's alternative argument.
 II.
The appellant contends that reversible error occurred when the trial court allowed the social worker to give hearsay testimony concerning his interview with D.L.F. He refers to the testimony of the witness set out in part I above, wherein the witness testified concerning D.L.F.'s credibility. There is no merit to this contention. The witness's testimony concerning D.L.F.'s out-of-court statements was properly admissible pursuant to §§ 15-25-31 and -32(1). See Edwards v. State,612 So.2d 1282 (Ala.Cr.App. 1992).
 III.
The appellant contends that the trial court committed reversible error in allowing the appellant's medical records to be used by the state at sentencing. After the appellant was charged with the offenses involved in the instant case, he was admitted to Charter Woods Hospital for psychiatric treatment when it was discovered that he was contemplating suicide. While at the hospital, he admitted to three occasions of sexual misconduct with D.L.F., involving mutual masturbation. He also stated that in defending himself he contemplated denying the charges and attempting to convince the jury that D.L.F. was lying. The hospital records reflect these statements and admissions. The trial court ordered the records delivered to the court for its consideration in sentencing. The contents of the records were not known by the state during the guilt phase of the trial, and they came to light only during the sentencing phase. At the sentencing hearing, the prosecutor was allowed to cross-examine character witnesses presented by the appellant by asking each if his or her opinion as to the appellant's character would be the same if he or she knew that the appellant had confessed to committing sexual acts with D.L.F.
There is no merit to the appellant's contention. A defendant's medical and psychological history, if available, may be made a part of a presentence report. Ala.R.Crim.P. 26.3(b)(6). The appellant did not object to the use of the records on grounds of confidentiality, and apparently concedes that the trial court has a right to review the records in arriving at a proper sentence. He objects only to the use of the records by the prosecutor in attempting to impeach the appellant's character witnesses. The trial court was properly aware of the impeaching evidence in the hospital records and could consider the testimony of the character witnesses in the light of that evidence regardless of its use by the prosecutor. Thus, if any error in the use of the records for impeachment of the witnesses *Page 661 
by the prosecutor occurred, and we do not find that it did, it would, at most, be harmless. Ala.R.A.P. 45.
 IV. and V.
On original submission, we remanded this case to the trial court with instructions to conduct an in camera examination of the records of Major Kenneth Green, Dr. Fred George, Dr. Robert Nolan, and the Alabama Department of Human Resources pertaining to D.L.F. and to determine if those records contain any exculpatory evidence or any impeachment evidence that should have been disclosed, bearing upon the question of the credibility of D.L.F. The trial court has complied with our instructions and has filed a return to our remand. The return shows that the trial court required the production of those records, examined them in camera, and made specific findings in reference to them. It found that the records contained no exculpatory evidence pertaining to the appellant. It also found that there was nothing in the records "that would in any way indicate D.L.F. to be a 'habitual liar' with a history of mental instability or that the records were in any way necessary for the purposes of cross-examination to impeach D.L.F.'s credibility." It concluded:
 "Having weighed the reasons for confidentiality/privilege against Raymond Lewis Schaefer's right to bring to the jury's attention facts affecting the witnesses' credibility, the trial court determines that the probative value of requiring the production of, or the 'in court use as evidence' of, these records is outweighed by protecting the interest in the confidentiality/privilege of the records. . . . The trial court also finds that Raymond Lewis Schaefer's Sixth Amendment right of confrontation is outweighed by the statutory privilege and the victim's right to confidentiality."
The records in question have been forwarded to us by the trial court as we requested for review on appeal and have been made a part of the record. We have reviewed the records in their entirety and we agree with the trial court's finding that they contain no exculpatory evidence. We have also reviewed the records for impeachment evidence and particularly for material that would have had a bearing upon the credibility of the prosecuting witness, D.L.F. In this regard, we find in the records of Lyster United States Army Community Hospital, Fort Rucker, Alabama, a record of an interview by Dr. Nolan with D.L.F.'s mother on January 6, 1992. This record contains notes by Dr. Nolan as follows: "lying and stealing things" and "[D.L.F.] stealing, took BB Gun from the appellant's son Shawn, and taken $ from boyfriend's house." The hospital records also show that D.L.F.'s mother completed a "Child Behavior Checklist" on the same date, showing the following entries: "Lying or cheating," "steals at home," and "steals outside the home." The hospital records also contain Dr. George's note "stories," which he made during interviews with D.L.F. and his mother on January 23, 1992. The information reflected in these entries obviously came from D.L.F.'s mother and pertained to D.L.F. There are no other entries in the records that would reasonably bear upon the credibility of D.L.F.
The appellant claims that denial of access to D.L.F.'s records violated his Sixth Amendment right of confrontation. He argues that where the state's case rests on a key witness and where the defense consists almost entirely of an attack on that witness's credibility, the defendant is entitled to access to the witness's records of psychiatric, psychological, and social agency treatment and evaluation, regardless of any statutory privilege, for possible use in cross-examination. As we stated in our opinion on original submission, Schaefer v. State, supra, the records in question are privileged under §§ 12-15-100 and -101, 15-23-41 and -42, and 34-26-2, but this statutory privilege may, under certain circumstances, give way to a defendant's Sixth Amendment right of confrontation and cross-examination. As we previously stated in Schaefer v.State, supra, we adhere to the principle that the opportunity for cross-examination is central to the right of confrontation; however, this does not mean that records of the type considered here must be disclosed simply because they relate to a key state's witness whose claimed lack of credibility is the foundation of the defense. There are strong public policy reasons for maintaining *Page 662 
the confidentiality of such records.[1] In this state, where a party's light of discovery has come in conflict with a communication that is the subject of a statutory privilege, the courts have decided the issue on the facts of each particular case, in other words, on a case-by-case basis. Ex parte Rudder,507 So.2d 411 (Ala. 1987); Kirby v. State, 581 So.2d 1136
(Ala.Cr.App. 1990). The reasons for confidentiality must in each case be weighed against the defendant's right to bring to the jury's attention facts affecting the witness's credibility, and access to such records must be left to the discretion of the trial court, which is in a better position to assess the probative value of the evidence in the records as it relates to the particular case being tried, and to weigh that value against the interest in the confidentiality of the records subject, of course, to our review for abuse of that discretion.
In the instant case, we must review the trial court's exercise of its discretion by examining the records ourselves. We must decide whether, under the circumstances of this case, denial of access to the records deprived the appellant of his right of confrontation. After reviewing the records and considering the circumstances of this case, in the light of the authorities set out above, we conclude that the trial court did not err or abuse its discretion in refusing the appellant access to the records. Foremost, there is nothing in the records to suggest that D.L.F. was suffering from an emotional or mental defect that would have materially affected the accuracy of his testimony or affected his ability to know and correctly relate the truth so as to justify breaching the confidentiality of those records by disclosing them to the appellant.
In addition, the trial record discloses that the appellant was aware before the trial of his 10-year-old stepson's problems and the psychological treatment he had received. The record further shows that he was aware that his stepson had been suspected of lying on occasion to get out of trouble and also suspected of stealing. In his motion filed well before the trial seeking an independent psychiatric or psychological examination of D.L.F., he stated, "There is evidence of instability, incompetence and/or fabrication in and through the minor child witness." Moreover, his admitted trial strategy from the beginning was to deny the charges and attack D.L.F.'s credibility on the basis that the child had been known to lie and had been suspected of stealing. The extensive cross-examination of the state's witnesses, including D.L.F., also indicates that the appellant was well aware of the possibility that D.L.F. had told lies and had been guilty of stealing. In fact, in cross-examining D.L.F.'s mother and his former wife, he asked her if D.L.F. had been known from time to time to lie, and she answered, "Yes." (She was not asked whether D.L.F. had been known to steal or was suspected of stealing.) D.L.F. admitted on cross-examination that he sometimes lied to get out of trouble. (However, he was not asked any direct question about stealing.) Numerous questions on cross-examination directed toward D.L.F. and one other witness sought to establish that D.L.F. had stolen watches from school and had been observed "going through things" or "rambling" through other peoples' houses. D.L.F., when first asked about the watches, denied bringing watches home from school and later stated that he did not remember. He also denied "going through things" at certain residences. The appellant himself *Page 663 
testified that D.L.F. had stolen an automobile jack from D.L.F.'s grandfather. (However, the grandfather testified that the appellant stole the jack.) We conclude that it is apparent from the testimony and questioning that the appellant was well aware before trial that D.L.F. had been accused of lying and stealing, and had the records been made available to him before or during trial, the information contained therein would have added nothing material to the knowledge already possessed by the appellant.
We further note that had the records been available to the appellant, they could have been used as impeachment evidence only as to D.L.F.'s mother, i.e., as prior inconsistent statements. However, we find that any benefit from any potential impeachment would have been minimal at best and that that benefit, when weighed against the purposes of the statutory privilege, does not overcome the privilege. D.L.F.'s mother admitted that D.L.F. had been accused of lying. Thus, she could not have been impeached on this characteristic of D.L.F. Moreover, she was not asked any question in regard to D.L.F.'s suspected stealing. In noting that one of her statements in the records as to stealing specifically relates to D.L.F.'s stealing a BB gun belonging to the appellant's son, who resided in the same house, we are unwilling to assume that D.L.F.'s mother would have denied that alleged theft and thereby have provided ground for impeachment. Moreover, with D.L.F.'s mother having made such statements to the psychologists, we are not willing to assume that she would have denied making such statements had she been asked on cross-examination. To find otherwise would be to speculate.
In reaching our conclusion that the trial court did not abuse its discretion in finding that the records need not be made available to the appellant, we are aware of the importance of D.L.F.'s testimony in the prosecution's case and the importance of his credibility. However, we are impressed with the straightforward testimony of the young man; the existence of the corroborating testimony, e.g., the sexually explicit films portraying scenes that he had described before the tapes were seized and that he was able to identify afterwards; his ability to withstand vigorous and prolonged cross-examination; and the failure of the appellant to contradict D.L.F.'s testimony on material points. The information in the records pertaining to D.L.F.'s lying and possibly stealing, which arguably could be considered as going to his credibility, was known to the appellant before trial and was presented to the jury by him through direct and cross-examination of witnesses. The appellant does not complain of any restrictions on his cross-examination of D.L.F. In fact, his cross-examination of D.L.F. was thorough and extensive. Under the circumstances here, a reasonable jury could not have received any different impression of D.L.F.'s credibility, much less a significantly different impression, had the appellant and his counsel been permitted access to the records in question. We find neither an error in the trial court's ruling nor an abuse of its discretion. The denial of access to the records in this case did not deprive the appellant of his right of confrontation, nor did it hinder or deprive him of the ability to test the truth of D.L.F.'s testimony or of D.L.F.'s mother's testimony.
Assuming, arguendo, that error did occur in denying the appellant's Sixth Amendment rights of confrontation and cross-examination, and we do not concede that it did, under the circumstances in this case, we find that the error would have been harmless beyond a reasonable doubt. In view of the jury's having before it evidence of the young man's propensity to lie and possible propensity to steal, there is no likelihood that had the records been made available to the appellant the outcome of the trial would have been different. See Chapman v.California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967);Thornton v. State, 527 So.2d 143 (Ala.Cr.App. 1987), cert. quashed, 527 So.2d 146 (Ala. 1988); Ala.R.App.P. 45.
 VI.
The appellant contends that the trial court abused its discretion in denying his motion filed before the trial in this case seeking a court-ordered independent psychiatric examination of D.L.F. He argues that without further psychological examination he *Page 664 
had no means of rebutting the presumption that D.L.F. was competent to testify. We find no merit in this argument.
Section 15-25-3(c), Code of Alabama 1975, states:
 "Notwithstanding any other provision of law or rule of evidence, a child victim of a physical offense, sexual abuse, or sexual exploitation, shall be considered a competent witness and shall be allowed to testify without prior qualification in any judicial proceeding. The trier of fact shall be permitted to determine the weight and credibility to be given to the testimony. The court may also allow leading questions of the child witnesses in the interest of justice."
The trial court examined D.L.F., in camera, to determine whether the child understood what it meant to tell the truth and that it was necessary that he tell the truth regarding the alleged abuse. Moreover, the appellant subjected D.L.F. to extensive cross-examination. A review of that testimony, as well as D.L.F.'s testimony on direct examination, refutes the appellant's claim that D.L.F. was not competent to testify. Under the circumstances existing here, the trial court did not abuse its discretion in denying the appellant's motion seeking an independent psychiatric examination of D.L.F. See Arnett v.State, 551 So.2d 1158 (Ala.Cr.App. 1989).
 VII.
The appellant contends that the trial court committed reversible error in allowing D.L.F.'s grandfather to testify that D.L.F.'s general reputation in the community for veracity and truthfulness was good. He argues that the grandfather did not live in the community where D.L.F. lived and could not have had knowledge of the opinions of others in the community. "When a witness is produced to testify to another's general reputation in a particular community, it is a prerequisite to such testimony that the witness must have been either a member of the community or have had a reasonably close connection with the community." C. Gamble, McElroy's Alabama Evidence, § 26.2(10) (4th ed. 1991).
Although the grandfather lived in Louisiana, he testified that he frequently visited in the community where D.L.F. lived and that he knew and visited with "quite a few" people in the community. He testified that he had visited D.L.F.'s school and had spoken with his teacher. We find from the evidence that the grandfather had a connection with D.L.F.'s community sufficient to qualify him to give his opinion of D.L.F.'s general reputation as to truth and veracity in the community where D.L.F. lived. We find no merit in this contention.
Assuming for the sake of argument that error occurred in allowing the grandfather to testify, such testimony was harmless because his testimony was cumulative of other witnesses who lived in the community who also testified to D.L.F.'s good general reputation for truth and veracity.
 VIII.
The appellant contends that it was error for the trial court to allow into evidence the following items seized from the appellant's residence when the search warrant was executed: a vibrator, a deck of pornographic playing cards, copies of "Private Lives" newsletters, and pornographic films. With the exception of some of the videotapes, D.L.F. did not recognize any of the items. We agree with the appellant that the vibrator, the deck of cards, and newsletters were erroneously admitted into evidence. They were not relevant to the charged offenses. However, we do not agree with the appellant that the error requires reversal of this case. In light of the fact that the videotapes, which were properly admitted, were so much more sexually explicit than those items that were improperly admitted into evidence, we find that the erroneous admission of the other items was harmless. Ala.R.A.P. 45.
 IX.
The appellant contends that the trial court erred in allowing Major Green, the social worker at Fort Rucker, who interviewed D.L.F. concerning his allegations of sexual *Page 665 
abuse, to testify as an expert on the subject of sexual abuse. The state correctly points out that this issue was not preserved for appellate review. A review of the record discloses that even though the appellant's counsel questioned Major Green extensively on voir dire as to his qualifications to testify, no objection on this ground was ever raised to his testifying. Nevertheless, we have reviewed the record as to the witness's qualifications and find that the trial court did not abuse its discretion in allowing Major Green to testify. In our opinion, he was fully qualified to testify as an expert in the field of sexual abuse. See Inmon v. State, 585 So.2d 261
(Ala.Cr.App. 1991).
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
McMILLAN and COBB, JJ., concur.
TAYLOR, P.J., concurs in part, dissents in part.
LONG, J., recuses himself.
[1] "Such records often will contain sensitive and private material from and about other members of the witness' family, and sensitive and private information about the witness' emotional life, all of which may have no bearing on the witness' ability to recall and relate the truth. Furthermore, society has an interest, which this state has elevated to the status of a privilege in the case of a patient and psychiatrist or psychologist and which a general rule of confidentiality will further, in encouraging people to seek counseling in times of emotional distress and encouraging those people 'to make full disclosure to a physician [or other mental health professional] in order to obtain effective treatment free from the embarrassment and invasion of privacy which could result from [access to] a doctor's [or other mental health professional's records].' State v. White, 169 Conn. 223,234-35, 363 A.2d 143, cert. denied, 423 U.S. 1025,96 S.Ct. 469, 46 L.Ed.2d 399 . . . (1975)."
State v. Storlazzi, 191 Conn. 453, 464 A.2d 829, 833 (1983). See also Ex parte Rudder, 507 So.2d 411, 413 (Ala. 1987).