JOINER, Judge.
J.D.W. was convicted of one count of first-degree sodomy, see § 13A-6-63(a)(3), Ala.Code 1975, and three counts of sexual abuse of a child less than 12 years old, see § 13A-6-69.1, Ala.Code 1975. J.D.W. was sentenced to 25 years’ imprisonment for the first-degree-sodomy conviction and to 15 years’ imprisonment for each sexual-abuse conviction; the circuit court ordered that the sentences were to be served concurrently. : (C-. 36-37.) We reverse J.D.W.’s convictions and sentences and remand this case for further proceedings.
In February 2010, J.D.W. was indicted on three counts of first-degree sodomy, see § 13A-6-63(a)(3), Ala.Code 1975, and one count of first-degree' sexual abuse, see § 13A-6-69.1, Ala.Code 1975, all involving allegations made by his- biological daughter; R.W.
*865 R.W., who was 13 years old at the time of trial, testified as follows on direct exam: ination regarding four instances of abuse:
“Q. ... Let’s slow down and let’s talk about kind of the first time you remember something happening. Do you réeall the first time? •
“A. The first time I was like around four and I was in the bedroom with him, and he pulled down my pants and he stuck his dick on my vagina. And my face was covered with a purple arid black crocheted blanket.
[[Image here]]
“Q. All right. So he covers — at what point does he cover your face, before or after he takes your clothes off?
“A. Before.
“Q. All right. So you’re sitting on the side of the bed, am I correct?
“A. Yes.
“Q. Now, once you’re up on the bed and your clothes are down, what happens next, [R.W.]?
“A. He put his dick on my vagina.
[[Image here]]
“Q. All right. And over the course of this, did he ever touch you with anything besides his private, maybe another part of his body?
“A. His mouth.
“Q. His mouth, okay. Now, tell us where he touched you with his mouth.
“A. He touched me with his mouth on my vagina with his tongue.
“Q. Okay. And just so I’m clear, is this all during the same event, same one time?
“A. Same.
[[Image here]]
“Q. . . So is this the only time that anything like this ever happened between you and your dad?
“A. It happened a couple more times, one time in the living room.
[[Image here]]
“Q. All right. So tell us what exactly happened in the living room.
“A. Well, I told him I wanted McDonald’s [a fast-food restaurant], and he told me that if I was.hungry, I had to suck his dick and rub his balls.
“Q. Okay. Now, were these his words and his terms?
“A. His words.
“Q. All right. Now, when he tells you to do this, what happens next, what do you do, [R.W.]?
“A. I did what he told me to do.
[[Image here]]
“Q. Okay. All right. And how did this stop, what caused it to stop?
“A. I just told him that I wanted to quit and he told me okay.
[[Image here]]
“Q. All right. Now, that was at age eight or nine, so you’ve talked about a time at age four now and you’ve talked about an event at age eight or nine. Are these the only two times something happened between you and your dad?
“A. When I was around five, but it was in the bedroom.
“Q. In the bedroom. All right. Tell us a little bit about what was going on then, [R.W.].
“A. It was' like basically just the same thing what happened when I was four. He took off my pants and rubbed his dick on my vagina.
[[Image here]]
“Q. So he tells you to lie down, and I think you said he took your clothes off; is that right?
“A. Yes.
“Q. All right. Now, what happens after he takes your clothes off?
*866 “A. He put his dick on my vagina.
[[Image here]]
“Q. All right. So he rubs himself on you, and what happens next?
“A. I don’t remember.
“Q. You don’t remember?
“A. What happened after that.
“Q. Is that all that happened in the bedroom that day?
“A. Yeah.
[[Image here]]
“Q. All right. Now, are these the only times something like this happened to you, [R.W.]?
“A. That I can remember, like certain days, dates.”
(R. 187-88, 191-92, 193-95, 198-99, 202-04.)
During J.D.W.’s cross-examination of R.W., the following exchange occurred:
“Q. Okay. And I think [the State’s attorney] asked you several times if there was any other incidents where this happened. I’m going to ask you the same question. You described for this jury three incidents spread out over three and a half, four or five years here and this is all you’ve described.
“A. Yes.
“Q. And you’re not claiming there’s any other incidents, are you?
“A. Not that I can remember, like direct, like why and all that.
“Q. Well, and if you can’t remember it, then we don’t know if it happened, right?
‘ A. I guess you could say that.”
(R. 258.)
Following R.W.’s cross-examination, the State advised the trial court that it intended to call Debbie Wilbourn — a “forensic interview specialist and counselor” at the “Prescott House Child Advocacy Center” in Birmingham, Alabama — to have Wilb-ourn testify regarding allegations made by R.W. in R.W.’s forensic interview with Wilbourn. The State, relying on Rule 801(d)(1)(B), Ala. R. Evid.,[1] argued that J.D.W. — by implying on cross-examination that R.W.’s allegations were “recent fabrications” — had “opened the door” for for testimony regarding “prior consistent statement[s]” made by R.W. (R. 282-85.) The State asserted that it intended to use Wilbourn to testify to instances of abuse that R.W. “was not able to testify to ... on direct.” (R. 382.)
In response, J.D.W. objected on a number of grounds. J.D.W. argued that on cross-examination he “simply asked [R.W.] a question, [that] [R.W.] answered it in an inconsistent manner than she did under direct-examination” and that it was “for the jury to reconcile that inconsistency.” (R. 377.) J.D.W. argued that Wilbourn’s testimony would be “improper bolstering” of R.W.’s testimony and would be “hearsay” that was “not subject to any of the exceptions.” (R. 377-78.) J.D.W. also challenged the State’s position that “[R.W.] was not able to testify to [portions of her interview with Wilbourn] on direct,” because, he argued, the State had “their shot when [R.W.] took the witness stand.” (R. 382.)
*867 The trial transcript reflects the following regarding the trial court’s ruling on the State’s motion:
“THE COURT: In regard to the issue about prior consistent statements of the prosecutrix, the court denies the state’s request that they be allowed to get into the — what’s the report?
“MS. SEWELL: The CAC [Child Advocacy Center] interview of [R.W.].
“THE COURT: The CAC interview under 801(d)(1)(B), but will allow limited evidence in that regard for — as collaborative evidence to show that the prosecutrix’s statements about prior incidents to the CAC were consistent, according to the state, with [R.W.]’s testimony in that regard an direct, okay? So that’s the extent to which the motion will be granted and evidence allowed.”
(R. 373-74.) The trial court later indicated that its decision was based on “Inmon v. State, 585 So.2d 261 [ (Ala.Crim.App. 1991) ], as well as other easelaw.” (R. 378.)
Wilboum subsequently testified on direct examination — over J.D.W.’s renewed objections — in relevant part, as-follows:
“Q. Now, did [R.W.] disclose to you the first time that something had happened to her?
“A. Yes, she did.
“Q. Okay. And what was it that [R.W.] told you about this first time?
“A. She said that she was on the black chair, that they used to have a black chair and a black couch [in- the living area], and that her dad put his mouth on her private area, which she identified as the vagina.
[[Image here]]
“Q. Let’s talk about this second time in the bedroom that you mentioned, what were the circumstances surrounding that according to [R.W.]?
“A. She says that another time she went into her mom’s bedroom and her dad asked her if she.wanted to play a game. She says yes and he took the covers off and had his underwear halfway down, she states he told her to put her .mouth on his private and she says that it felt like snakes. She states they had pet snakes and his private felt like their skin when it is wet. And she said her dad told her not to tell or he would spank my butt.”
(R. 398.)
The jury subsequently returned a verdict on each count of the indictment. Regarding the first two charges — first-degree sodomy, “location-living room” — the jury found J.D.W. guilty of sexual abuse as a lesser-included offense of both charges. (C. 29-32.) Regarding the third charge— first-degree sodomy “location-bedroom”— the jury found J.D.W. guilty as charged. (C. 33-34.) Likewise, regarding the fourth charge — sexual abuse of a child less than 12 years old, “location-bedroom” — the jury found J.D.W. guilty as charged. (C. 35.)
On appeal, J.D.W. argues, among other things, that “[t]he trial court erred when it refused to exclude [Wilbourn’s] testimony.” (J.D.W.’s brief, p. 41.) The State argues, however, that Wilboum’s testimony regarding R.W.’s “initial interview was completely consistent with [R.W.’s] testimony that other incidents of abuse occurred although she could not recall specific details as well as those that were brought against .[J.D.W.].” (State’s brief, p. 29.)
“‘The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.’ ” Brown v. State, 56 So.3d 729, 736 (Ala.Crim.App.2009) (quot *868 ing Ex parte Logging, 771 So.2d 1093, 1103 (Ala.2000)).
Rule 801(d)(1)(B), Ala. R. Evid., states:
“(d) Statements That Are Not Hearsay. A statement is not hearsay if—
“(1) Prior ' Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the stateinent, and the statement is (A) inconsistent with the declarant’s testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant’s testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.”
(Emphasis added.)
“[A] prior consistent statement need not be identical in every detail to the declarant’s ... testimony at trial,” because “[ijnevitably, witnesses’ recollections of past events will diverge.” United States v. Vest, 842 F.2d 1319, 1329 (1st Cir.1988). That being said, however, the declarant’s testimony and prior statement must be “sufficiently close to fall within.... 801(d)(1)(B).” Vest, 842 F.2d at 1329.
J.D.W. asserts that the “prior statements given by R.W. in the ... interview [with Wilbourn] ... were inconsistent with R.W.’s trial testimony that she could not remember any other incidences.” (J.D.W.’s brief, p. 42.) J.D.W.' argues that, “because R.W. did not testify about th[ose] ‘other incidents’ mentioned [by Wilbourn], the statements ... were not consistent with R.W.’s testimony.” (J.D.W.’s brief, p. 42.) Thus, J.D.W. concludes, “the statements made by R.W. [in her interview] did not fall within the category of statements exempted from the definition of hearsay” in Rule 801(d)(1), and “Wilbourn’s testimony was inadmissible.” (J.D.W.’s brief, p. 45.) We agree. Presuming without deciding that. J.D.W. implied that R.W.’s testimony was a “recent fabrication” or was subject to “improper . influence,” R.W.’s statement to Wilbourn was in substance inconsistent with R.W.’s trial testimony.
As a threshold matter, the dissenting opinion contends that the trial court’s decision was based on Inmon v. State, 585 So.2d 261 (Ala.Crim.App.1991) — not 801(d)(1)(B), Ala. R. Evid. — and that, because “J.D.W. does not challenge the propriety of the circuit court’s application of Inmon. ... [this] issue is not properly before this Court for review.” J.D.W. 176 So.3d at 871. We disagree. First, the State clearly understands the trial court’s ruling to be based, at least in part, on Rule 801(d)(1)(B), Ala. R. Evid. See State’s brief, p. 10 (“[U]pon further consideration the court held it would allow limited information from the Child Advocacy Center interview under Rule 801(d)(1)(B), Alabama Rules of Evidence, to corroborate the victim’s testimony with the consistency of her statements.”); State’s brief, p. 28 (“The court specifically rejected [J.D.W.]’s objection to testimony concerning R.W.’s original interview with the Child Advocacy Center on the basis of this Rule as well as Inmon_”). Second, even if the trial court stated that it was not relying on 801(d)(1)(B), the language of the trial court’s ruling tracks the language of 801(d)(1)(B), Ala. R. Evid. See R. at 374 (allowing the admission of evidence “to show that [R.W.’s] statements about prior incidents were consistent ... ' with [RW.’s] testimony on direct” examination). Third, even if the trial court’s ruling was based on Inmon, J.D.W. argued below — as he does on appeal — that Wilb-ourn’s testimony was inadmissible “hearsay, not subject to any of the exceptions.” (R. 378.); J.D.W.’s brief, pp. 44-45. Thus, whether under 801(d)(1)(B) or Inmon, *869 J.D.W. has consistently challenged the admissibility of Wilboum’s testimony on the basis that it is inadmissible hearsay.
Accordingly, we conclude that the matter is, in fact, preserved for review, and, therefore, we address J.D.W.’s claim. First, the merit of J.D.W.’s argument on appeal—that R.W.’s statements to Wilb-ourn were inconsistent with RW.’s trial testimony—is evident from the State’s position during trial. Notably, the State argued below—in support of its position to allow Wilbourn to testify—that it was calling Wilbourn to testify to incidents that R.W. was not able to recall on the stand but apparently had discussed in her forensic interview with Wilbourn. (R. 382.) Likewise, on appeal, the State continues to argue that Wilbourn’s testimony regarding RW.’s forensic interview was consistent with RW.’s trial testimony; the. State’s argument, however, is belied by its recognition that Wilbourn’s testimony included “other incidents of abuse” about which R.W. “could not recall specific details.” (State’s brief, p. 29.)
Second, as anticipated by the State, Wilbourn testified to instances of abuse— one in the living room and one in the bedroom—that R.W. apparently referenced in her forensic interview but never referenced at trial. . Notably, however, RW.’s statements during the interview— as relayed by Wilbourn at trial—actually contradicted R.W.’s trial testimony. According to Wilbourn’s testimony, R.W. reported during the interview that the first instance of abuse occurred when J.D.W. performed oral sex on R.W. on ■ a black chair in the living room; R.W. testified during trial, however, that the first instance of abuse was in her parents’ bedroom, on the bed.. Wilbourn’s testimony regarding. R.W.’s statements' during the forensic interview was inconsistent—not consistent—with R.W.’s trial testimony. See Black’s Law Dictionary 834 (9th ed.2009) (defining inconsistent as “not compatible with another fact or claim”). Therefore, Wilbourn’s testimony was not admissible under 801(d)(1)(B), Ala. R. Evid. likewise, the State does not argue that Wilbourn’s testimony—regarding the allegations made by R.W. in her forensic interview—was otherwise admissible, and we conclude that there is no other mechanism by which Wilboum’s testimony was, in fact, admissible.[2]
Accordingly, the trial court abused its discretion by allowing Wilbourn to testify to statements made by R.W. that were not consistent with R.W.’s trial testimony. Additionally, as discussed below, the admission of Wilboum’s testimony regarding R.W.’s statements was not harmless.
First, the State’s case centered nearly exclusively around R.W.’s trial testimony, along with the testimony of individuals to whom R.W. had disclosed the allegations of abuse; although' the State presented the testimony from a sexual-assault nurse examiner—who performed a sexual-assault examination on R.W.—the results of the’ sexual-assault examination were “normal.” (R. 370.) Although it *870 may be true that victim testimony alone is sufficient to convict, it does not follow that sufficient evidence renders harmless the erroneous admission of prejudicial testimony. See Ex parte Phillips, 962 So.2d 169, 163 (Ala.2006) (“As quoted above, the Court of Criminal Appeals concluded in its unpublished memorandum that ‘[t]he testimony of the victim alone is sufficient to establish a prima facie case of sexual abuse.’ That is true, but as noted above, this Court has held that even overwhelming evidence of guilt does not render prejudicial error harmless under Rule 45, Ala. R.App. P.” (quotations omitted)). See also Naylor v. State, 108 So.3d 1063, 1077 (Ala. Crim.App.2012) “Here, considering the record as a whole, we cannot conclude that the errors in the admission of the testimony were harmless. The evidence of [J.D.W.’s] guilt of the [four] charges of which he was convicted was far from overwhelming. There was no physical evidence connecting [J.D.W.] to the crimes.” Naylor v. State, 108 So.3d 1063, 1077 (Ala. Crim.App.2012).
Moreover, the jury was asked to consider two instances of first-degree sodomy that were alleged to have occurred in the living room. (C. 29-32.) R.W.’s testimony, however, included only one reference to an act of sodomy in the living room— the “McDonald’s” incident; therefore, Wilbourn’s testimony — detailing statements made by R.W. in her forensic interview — supplied the only evidence of a second instance of sodomy in the living room, and its erroneous admission was not harmless. See Ex parte Greathouse, 624 So.2d 208, 210 (Ala.1993) (recognizing that the inquiry in harmless error is whether, but for the error, “the jury would have returned a guilty verdict”).
The admission of Wilbourn’s testimony was erroneous and it is reversible error; accordingly, we reverse J.D.W.’s convictions and sentences and remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WELCH, KELLUM, and BURKE, JJ., concur.
WINDOM, P.J., dissents, with opinion.

. Rule 801(d)(1)(B), Ala. R. Evid., states:
"A statement is not hearsay if ... [t]he declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and the statement is ... cqnsis-tent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.”

. Our conclusion regarding the necessity of consistency is supported by the cases underpinning Inmon. This Court in Inmon stated that “if [a] victim 'has been subjected to cross-examination calculated to reflect upon her credibility as a witness,' the details of her complaint are admissible for the purpose of corroborating her testimony on direct examination." 585 So.2d at 265-66. Inmon was based on, among other cases, Parker v. State, 581 So.2d 1211 (Ala.Crim.App. 1990). In Parker this Court concluded that where cross-examination ' “highlighted several seemingly self-contradictory- statements made by the prosecutrix” the State was “entitled to attempt to rehabilitáte [the victim] by proof of her prior consistent statements....” 581 So.2d at 1215 (emphasis added).