# IN THE SUPREME COURT OF IOWA

No. 19–0295

Submitted November 18, 2020—Filed April 23, 2021

**STATE OF IOWA,**

    Appellee,

vs.

**TIMOTHY MICHAEL FONTENOT,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Patrick R. Grady, Judge.

Defendant seeks further review of a court of appeals decision affirming his conviction for two counts of indecent contact with a child. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., delivered the opinion of the court, in which Waterman, Mansfield, and McDermott, JJ., joined. McDonald, J., filed a dissenting opinion in which Appel and Oxley, JJ., joined.

Martha J. Lucey, State Appellate Defender, and Ashley Stewart (argued), Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sheryl Soich (argued), Assistant Attorney General, Jerry Vander Sanden, County Attorney, and Jordan N. Schier, Assistant County Attorney, for appellee.

**CHRISTENSEN, Chief Justice.**

In this case, over the defendant's objection, the jury was shown a video recording of a child's forensic interview where the child discussed the defendant's sexual abuse of her. This interview occurred at the time the child reported the abuse, and long before criminal charges were brought. The video was shown to the jury after defense counsel cross-examined the child at trial and suggested she had fabricated her criminal trial testimony by pointing out inconsistencies principally between her criminal trial testimony and her criminal case deposition. The district court allowed the jury to see the video only once and instructed the jury that the video could only be used as a tool to assess the child's credibility. The district court also allowed the criminal case deposition to be read to the jury. The jury ultimately found the defendant guilty of two counts of indecent contact with a child.

The defendant appealed, claiming it was error to let the jury see the interview. The court of appeals affirmed. We granted the defendant's application for further review. On our review, we now conclude the video was admissible as a prior consistent statement under Iowa Rule of Evidence 5.801(*d*)(1)(B). We affirm the defendant's convictions and sentence.

## I. Background Facts and Proceedings.

The defendant, Timothy Fontenot, was like an uncle to H.N. His brother, Joe, was in a long-term relationship with H.N.'s mother. During the events at issue, H.N. was eleven years old and lived with her mother, Joe, and other siblings in Marion, Iowa. Fontenot was frequently around H.N. and her best friend and communicated with them on Facebook Messenger. In July 2016, H.N. and her friend discussed how Fontenot

would touch them inappropriately. H.N. also told her younger sister about the inappropriate touching.

The younger sister was in bed with their mother at night and told her Fontenot had been touching H.N. When her mother spoke with H.N. that night, H.N. initially denied the allegation, but later in the same conversation, she said that Fontenot was touching her inappropriately. The next morning, July 14, 2016, Joe went to the Marion Police Department to report the allegations against his brother. H.N. was taken to a local hospital at the instruction of the police. On July 15, H.N. was taken to St. Luke's Child Protection Center (CPC), where she discussed the sexual abuse with a forensic interviewer. The interview was video recorded and lasted approximately fifty-five minutes.

In the video recorded CPC interview, H.N. spoke specifically about the most recent time Fontenot touched her. She told the interviewer they were in her brother's room on a couch while her brother sat in a chair playing video games when Fontenot rubbed her "private spot" (vagina) underneath her underwear and put his finger in her private spot. She explained he would put his hand underneath the bottom half of her shorts and underwear. She noted she would have a blanket over her and he would go underneath the blanket.

H.N. explained Fontenot first started touching her when she was seven or eight, only rubbing her pants at first before progressing to touching her private spot as she got older. She stated the first time he touched her private spot, she was ten years old and in her bedroom. H.N. said she was playing on her iPad while on her bed and Fontenot was on the floor on his knees when he touched her private spot. She noted the touching normally happened on her bed or her brother's couch, and she discussed how Fontenot would call the inappropriate touching "tickle

time." She added that Fontenot gave her UGG boots to get tickle time. H.N. also explained that her phone data and Wi-Fi were on Fontenot's cellular plan instead of her parents' plan and that he used this arrangement as a way to get "tickle time." She discussed how Fontenot would flip her and her friend up onto his shoulders, at which time he would sometimes touch their private spots.

On June 28, 2017, the State charged Fontenot with two counts of sexual abuse in the second degree, in violation of Iowa Code sections 709.1, 709.3(1)(b), and 903B.1 (2016), with H.N. named as the victim. Fontenot was also charged with two counts of indecent contact with a child, an aggravated misdemeanor, in violation of Iowa Code sections 709.12(1) and 903B.2, as to H.N.'s friend. On February 14, 2018, about nineteen months after her videorecorded CPC interview, defense counsel took H.N.'s deposition with Fontenot present in the same room. H.N. had not reviewed her CPC interview summary or watched the recording of it. She told defense counsel Fontenot last touched her inappropriately in July of 2016. She thought that the incident occurred in her brother's room while he was playing video games. She said that a blanket was tucked in around her and that she was wearing shorts. She told defense counsel she thought something happened but wasn't sure. She thought the touching was just above her clothes, but she could not remember.

During her deposition, H.N. also described a time Fontenot touched her in her room while she was in bed. After several more questions, defense counsel came back to this incident. H.N. stated she was not sure if Fontenot touched her under her clothes or above her clothes. She told defense counsel she thought Fontenot had been touching her since she was six or seven and would rub up her thigh. She affirmed she could not remember a time when Fontenot's fingers went inside her vagina. She said

he bought her UGG boots and gave her a cell phone. H.N. affirmed the inappropriate touching went on for years and happened more times than she could count in her room, her brother's room, and the living room. She noted there were times he would accidentally touch her private spot when flipping her up onto his shoulders but those times were not included in her total count of times he touched her inappropriately.

On February 28, the State filed a notice of intent to present H.N.'s CPC video interview under Iowa Rule of Evidence 5.807, the residual hearsay exception, or alternatively under Iowa Rule of Evidence 5.801(*d*)(1)(B), the rule excluding prior consistent statements as hearsay, if the defense claimed H.N.'s statements were fabrication. On December 17, the State filed an unresisted motion to amend the trial information to reflect two additional counts of indecent contact with a child, an aggravated misdemeanor, in violation of Iowa Code sections 709.12(1) and 903B.2, as to H.N.

Fontenot's jury trial began on December 17, 2018. H.N. took the stand as a witness for the State. Prior to trial, H.N. had not reviewed any of her statements, video recordings, or deposition. She testified Fontenot bought her items like a cell phone and UGG boots to get extra "tickle time," his term for inappropriate touching. When asked about the first time Fontenot did something bad to her, she explained she was six or seven when he rubbed her leg while on a camping trip. She testified Fontenot mostly touched her inappropriately in her bedroom or her brother's room. She said that at first, he would rub her legs, similar to the camping trip, but progressed over time to rubbing her private spot underneath her underwear. She noted Fontenot rubbed her private spot with his hand in her bedroom during the day and would not say anything to her while touching her.

She testified the last time Fontenot touched her, he rubbed her private spot with his hand. She stated he put his fingers inside her private spot once when she was in her brother's room while he was playing video games. She also explained Fontenot would sometimes put a blanket over her to touch her.

At trial, H.N. described how Fontenot would touch her and her best friend on the private spot by picking them up and putting them on his shoulders and then flipping them back down, one at a time. She testified Fontenot would "touch us like fast and then wait and then touch—like touch us back down when we were going back down." H.N. noted there were times he flipped her and did not touch her private spot and it was possible the touching was sometimes an accident. However, she affirmed she never felt it was an accident when he touched her underneath her clothing.

On cross-examination, defense counsel began by reminding H.N. of the deposition:

> Q. . . . And did you understand at that time that you were supposed to tell the truth? A. Yes.

> Q. Because most of what you just testified to you didn't tell me on that occasion.

Defense counsel went on to emphasize apparent inconsistencies between her trial testimony and what she had previously said in both her February 14, 2018 deposition and her July 15, 2016 CPC interview. For example, he addressed the incident in her brother's room she testified to, but he asserted, "[Y]ou didn't even think that you got touched on that occasion." He also brought up an incident she discussed in the deposition, noting it "sounds a little bit like what you were talking about here today .

. . . Except the difference was that you said you weren't sure that you were in your brother's room."

Defense counsel selectively read back sections of the deposition where H.N. said she wasn't sure on certain things. He repeatedly questioned whether H.N. understood she was to tell the truth. Parts of the questioning related specifically to her memory and how it could have improved at the trial in comparison to the deposition. He read the portion of the deposition in which she affirmed she did not remember a time Fontenot's fingers went inside her vagina. He impeached her testimony about Fontenot first touching her on her legs when she was around seven on a camping trip by noting she never discussed a camping trip in her deposition or the CPC interview.

Following H.N.'s testimony, the State argued to the district court that defense counsel's cross-examination opened the door for admission of the CPC interview because defense counsel implied her testimony was not consistent and was recently fabricated. The State additionally argued the video should be admissible under the residual hearsay exception. Defense counsel objected to admission of the CPC video at trial. In the event the CPC video was admitted, Fontenot requested H.N.'s deposition also be admitted with a redaction. The State agreed to admission of the redacted deposition.

The district court determined the video was admissible, explaining:

> Though I think it's rather close, much closer than there are in other cases where the person has a much more pronounced inability to remember and the child is younger, I think in terms of the context and how the questions were asked and answered, I think that's appropriate and in this case, because of the nature of [H.N.'s] testimony, rises to a level of necessity.

The video was shown to the jury once and was not allowed in the jury room during deliberations. The redacted deposition was also read aloud to the

jury. The district court included a jury instruction that as to any statement not made under oath, "only use the statement as a basis for disregarding all or any part of the witness's testimony." Thus, the statements in the CPC video were allowed as an instrument for the jury only to assess H.N.'s credibility as a witness and not treated as substantive evidence.

The jury found Fontenot guilty of two counts of indecent contact with H.N. It also found Fontenot not guilty of the two counts of indecent contact with H.N.'s friend. On February 15, 2019, the district court sentenced Fontenot to confinement for a period of 300 days, with all but 120 days suspended, for each count, and with the sentences to run concurrently. The court additionally placed Fontenot on special probation for ten years under Iowa Code section 903A and required him to register as a sex offender under section 901A. On February 20, Fontenot filed a timely notice of appeal. The court of appeals affirmed his conviction. We granted further review.

**II. Standard of Review.**

We review evidentiary rulings for an abuse of discretion. *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009). However, the standard of review for hearsay is for errors at law. *Id.*

**III. Analysis.**

The State argues the CPC video was admissible as a prior consistent statement under Iowa Rule of Evidence 5.801(*d*)(1)(B), under the residual exception to hearsay in rule 5.807, or under Iowa Code section 915.38. Fontenot contends the CPC video is hearsay evidence and was not admissible on any ground. Although it is unclear from the record exactly which rule the district court relied on in determining the video was admissible, this does not prevent us from upholding the district court's

admission of the video if it was properly admissible on any ground. *See, e.g.*, *Giza v. BNSF Ry.*, 843 N.W.2d 713, 724–25 (Iowa 2014) (noting a district court's evidentiary ruling may be upheld on an alternative ground); *DeVoss v. State*, 648 N.W.2d 56, 62 (Iowa 2002) (explaining we consistently apply an exception for evidentiary rulings to our error preservation rule). Upon our review, we conclude the CPC video was admissible as a prior consistent statement under Iowa Rule of Evidence 5.801(*d*)(1)(B).

Hearsay is a statement the declarant makes other than while testifying at the current trial that is offered "to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(*c*)(2). Hearsay is generally inadmissible unless the rules of evidence, Iowa Constitution, or an Iowa Supreme Court rule provide otherwise. *Id.* r. 5.802. Therefore, we need not address whether the video would have been admissible on any other ground. A witness's prior consistent statement is admissible as nonhearsay if

> [t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . [i]s consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying.

*Id.* r. 5.801(*d*)(1)(B). A witness's prior consistent statement is admissible under 5.801(*d*)(1)(B) "*only if* the statement was made before the alleged improper motive to fabricate arose." *State v. Johnson*, 539 N.W.2d 160, 164 (Iowa 1995) (adopting the bright-line federal rule for timing set out in *Tome v. United States*, 513 U.S. 150, 115 S. Ct. 696 (1995)). The requirements for rule 5.801(*d*)(1)(B) are as follows:

> (1) [T]he declarant must testify at trial and be subject to cross-examination concerning the prior statement; (2) there must be an express or implied charge of recent fabrication or improper influence or motive against the declarant; (3) the

prior statement must be consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must be made before the alleged motive to fabricate or improper influence arose.

7 Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.801:7, at 903 (2020–2021 ed. 2020) (footnotes omitted).

Contrary to the dissent, rule 5.801(*d*)(1)(B) does not require that the proponent of the evidence and the district court must specifically identify the charge of recent fabrication. Because Iowa caselaw is contrary to such a position, the dissent understandably cites no Iowa caselaw as authority for its position. We may affirm admission of evidence if it was properly admissible on any ground, including as a prior consistent statement. *See, e.g.*, *State v. Reyes*, 744 N.W.2d 95, 100 (Iowa 2008); *Giza*, 843 N.W.2d at 724–25; *DeVoss*, 648 N.W.2d at 62. For example, in *State v. Brotherton*, we concluded testimony of a social worker was admissible as a prior consistent statement although the trial court had not admitted it as such and had given jury instructions that the testimony was not to be considered as substantive evidence. 384 N.W.2d 375, 380 (Iowa 1986) (en banc); *see also State v. Jespersen*, 360 N.W.2d 804, 806 (Iowa 1985) (determining hearsay statements were admissible as prior consistent statements although the trial court admitted them as excited utterances).

In this case, defense counsel opened the door for admission of the CPC video when he repeatedly implied during his cross-examination of H.N. that "most of what you've just testified to" was fabricated, she was not telling the truth, and her story at trial was inconsistent with her prior statements. The district court then admitted the CPC video because of "the context and how the questions were asked and answered."

**A. Timing Requirement.** A prior consistent statement must be made before the alleged motive to fabricate or improper influence arose.

*Johnson,* 539 N.W.2d at 165. Fontenot maintains the timing requirement is not met because the CPC interview occurred after H.N. accused Fontenot of sexual abuse. Fontenot only cites *State v. Johnson,* 539 N.W.2d 160, for authority.

In *Johnson,* this court determined that the district court had erroneously admitted video of a child's CPC interview at trial as a prior consistent statement under rule 5.801(*d*)(1)(B). *Id.* at 160. The defendant testified his daughter made up sex abuse allegations against him after he told her he might schedule her for an overnight visit at a Masonic Children's Home. *Id.* at 161. He considered scheduling this visit because of difficulties he and her mother were having disciplining her, concerns they had about her current boyfriend, and the fact that her mother and her "were not getting along." *Id.* He further testified that he believed his daughter would rather live in a local foster home than be forced to end contact with her boyfriend, as might happen if she was placed in the Masonic home or continued to reside with him. *Id.* The child's CPC interview occurred after the defendant had threatened to place her in the Masonic home. *Id.* at 161. We concluded the video was not admissible as a prior consistent statement because the video was recorded after the daughter's alleged motive to fabricate arose. *Id.* at 163–65; *see also United States v. Bercier,* 506 F.3d 625, 629 (8th Cir. 2007) (determining that conversations victim had shortly after a sexual assault she said occurred in defendant's bedroom did not qualify as prior consistent statements when the defendant charged that she fabricated the story immediately after she left his bedroom).

On the same day we decided *Johnson,* we issued our decision in *State v. Capper,* 539 N.W.2d 361 (Iowa 1995), *abrogated on other grounds by State v. Hawk,* 616 N.W.2d 527 (Iowa 2000) (en banc). In *Capper,* two

children testified the defendant had sexually abused them. *Id.* at 364. At trial, defense counsel vigorously cross-examined the children, challenging their credibility. *Id.* at 365. To impeach their testimony, he introduced portions of their depositions taken prior to trial. *Id.* One of the children, N.S., denied in her deposition that defendant had at any time tried to touch her breast or to rub her in the vagina area. *Id.* at 366. However, N.S. testified at trial that the defendant had touched her on her stomach, crotch, and vagina. *Id.* at 365. Defense counsel implied the children changed their story after he had deposed them. *Id.* at 366. Following cross-examination, the district court allowed a deputy sheriff to testify as to statements N.S. made to him before her deposition was taken. *Id.* The deputy sheriff testified N.S. stated defendant touched her breast and vagina. We determined the deputy sheriff's testimony, which preceded N.S.'s deposition, was properly admitted as a prior consistent statement. *Id.*

The record in this case is distinguishable from *Johnson*, where the defendant alleged the child had *fabricated* the entire story, and more like *Capper*, where defense counsel implied at trial the children had *changed* their stories since their depositions. Perhaps anticipating this, defense counsel asserted for the first time at oral arguments that Fontenot's defense has been that H.N. made up the allegations because Fontenot threatened to take away the cell phone he paid for her to have. Our review of the record shows defense counsel never brought this alleged motive to fabricate into evidence or discussed it in its brief. The record shows the State offered the CPC interview as evidence after defense counsel suggested H.N.'s testimony at trial had changed and was inconsistent from her CPC interview and deposition, not to rebut a charge that H.N. made up the story to keep her cell phone. Thus, in this case, unlike in *Johnson*,

it is not an alleged motive for making up the initial allegations that is at issue but rather defense counsel's cross-examination where he implied H.N. was changing or fabricating her story on the stand or in her deposition taken on February 14, 2018. *See id.*; *United States v. Wilkinson*, 754 F.2d 1427, 1433 (2nd Cir. 1985) (allowing admission of witness's prior consistent statement after defense counsel on cross-examination brought out inconsistencies between witness's statements on the stand and statements made previously).

Fontenot argues that because the CPC interview occurred after H.N. accused Fontenot of sexual abuse, the interview is not admissible as a prior consistent statement. As discussed above, this argument fails to recognize that in this case, the charge of fabrication arose at trial when defense counsel focused on inconsistencies between the deposition and the trial testimony. *See United States v. Ruiz*, 249 F.3d 643, 648 (7th Cir. 2001) (allowing admission of prior consistent statements after defense counsel's cross-examination implied the witness had fabricated on the stand by noting his testimony included observations his prior statements had not mentioned); *Brotherton*, 384 N.W.2d at 380 (determining defense counsel's cross-examination made a charge of recent fabrication as required under rule 5.801(*d*)(1)(B) when questioning related to the child's present memory and whether the child's story on the stand was made up), *modified by Johnson*, 539 N.W.2d 160; *cf. United States v. Beaulieu*, 194 F.3d 918, 920 (8th Cir. 1999) (determining out-of-court statements were not admissible at trial as prior consistent statements when defense counsel did not assert victim had fabricated her account of the abuse until closing arguments). The CPC interview occurred two days after the last alleged incident of abuse, the deposition occurred nineteen months later, and H.N.'s trial testimony occurred ten months after that. At trial, defense

counsel claimed H.N. was fabricating or changing her story and impeached her with portions of her deposition. If defense counsel used H.N.'s deposition to imply recent fabrication and impeach her on cross-examination, then the CPC video that occurred first and closest to the last allegation of abuse should also be admitted for the jury's consideration. At earliest, Fontenot's charge of fabrication or change in story arose at H.N.'s deposition on February 14, 2018. Therefore, the requirement that the prior consistent statement occur before the recent charge of fabrication arose is met in this case.

**B. Implied Charge of Recent Fabrication.** A prior consistent statement is admissible only if it is offered to rebut an express or implied charge of recent fabrication. In *State v. Jespersen*, a testifying witness, Stephanie Clark, had first made a statement to a man named Ivan Snow that the defendant said he was going to kill the deceased. 360 N.W.2d at 806. Clark later made a second statement to police officers that defendant said he was going to stab the deceased. *Id.* at 807. Clark made a third statement at trial that defendant told her he was going to kill the deceased. *Id.* On cross-examination, defense counsel pointed out the inconsistencies between her trial testimony and what she had previously stated to police officers—particularly that she had spoken of killing rather than stabbing. *Id.* We concluded that "the implication of this line of questioning was that Clark was lying in her trial testimony when she said defendant used the word 'kill' rather than 'stab.'" *Id.* Thus, we determined Ivan Snow's testimony as to Clark's first statement to him that the defendant said he was going to kill the deceased was admissible as a prior consistent statement. *Id.*

*State v. Brotherton*, 384 N.W.2d 375, is also instructive. There, the child first made statements to a social worker that the defendant had

sexually abused her. *Id.* at 380. The child made a second round of statements in a deposition. *Id.* At trial, the child gave a third round of statements that defendant had sexually abused her. *Id.* Defense counsel vigorously cross-examined the child partly on matters contained in the deposition. *Id.* Defense counsel denied he made any charge of recent fabrication or improper motive or influence in his cross-examination. *Id.* We disagreed because parts of the cross-examination related to matters such as the child's present memory, whether the child made up the story testified to at trial, and the mother preparing the child for trial. *Id.* Consequently, under the rule for admission of prior consistent statements, the social worker was allowed to testify as to the child's first round of statements that were consistent with her trial testimony. *Id.* at 380–81.

The present case follows the same factual scenario. H.N. first made certain statements to the CPC interviewer. For example, she stated Fontenot put his finger inside her vagina once. She also stated the last time he touched her was in July 2016 in her brother's room while her brother played video games. H.N. made a second round of statements in her deposition. She asserted she could not remember a time Fontenot's fingers were inside of her. She second-guessed whether she could remember if Fontenot had touched her in her brother's room while he played video games in July 2016. H.N. then made a third round of statements at trial where she testified to various details including that Fontenot put his finger inside her and described the last time he inappropriately touched her as happening in her brother's room while he played video games in July 2016 and defense counsel vigorously cross-examined H.N. by focusing on apparent inconsistencies in her statements at the deposition and trial. *See United States v. Kenyon*, 397 F.3d 1071, 1080 (8th Cir. 2005) (explaining if defense counsel had impeached the

child witness with an intervening inconsistent statement, then the child's consistent prior statement made shortly after the last incident of alleged abuse would be admissible to rehabilitate the child's credibility).

On appeal, Fontenot does not deny defense counsel made an implied charge of recent fabrication during his cross-examination of H.N. Our review of the trial transcript shows defense counsel implied H.N.'s story at trial had changed from her deposition and was fabrication. Furthermore, the district court judge observed defense counsel's demeanor and tone during cross-examination and determined the video was admissible because of "how the questions were asked." This is not a situation where defense counsel merely pointed out H.N. had made prior inconsistent statements. He repeatedly implied she was fabricating and questioned her present memory and truthfulness. *See Brotherton*, 384 N.W.2d at 380 (finding charge of recent fabrication when questioning related to child's present memory); *State v. Jenkins*, 326 N.W.2d 67, 71 (N.D. 1982) (allowing witness to testify to child's prior statements alleging abuse when cross-examination attempted to establish the child or her mother made up a story about the abuse).

He stated no less than seven times during cross-examination of H.N. in various iterations that "all we wanted you to do was to tell the truth" at the pretrial deposition. A jury could reasonably infer H.N. had fabricated her testimony from this repeated line of questioning. *See United States v. Young*, 105 F.3d 1, 9 (1st Cir. 1997) (affirming admission of a prior consistent statement after defense counsel inadvertently elicited witness testimony from which a jury could possibly infer the witness had fabricated his testimony); *United States v. Patterson*, 644 F.2d 890, 900 (1st Cir. 1981) (determining there is a charge of recent fabrication if "[t]he jury could have thought it was being suggested that [a witness]'s testimony

was recently fabricated"). Defense counsel made multiple statements calling H.N.'s memory into question. For example, he asked "How is it that your memory is better today than it was back in February of this year when we talked?" and "Remember that? That you weren't having a problem with your memory." It is hard to imagine how these statements could be perceived as anything other than an implication she was fabricating at trial. *See Dearing v. State*, 691 P.2d 419, 421 (Neb. 1984) (per curiam) (finding charge of recent fabrication when "trial counsel cross-examined the child witness at considerable length with the apparent intention of implying that the child's credibility was questionable"). On top of this, counsel sought to make H.N.'s testimony at trial appear inconsistent from her previous statements at least ten times.

Furthermore, H.N. denied on cross-examination that she omitted certain portions of her trial testimony from her deposition.

> Q. . . . And did you understand at that time that you were supposed to tell the truth? A. Yes.

> Q. Because most of what you've just testified to you didn't tell me on that occasion. Remember that? A. I'm pretty sure I told you.

> . . . .

> Q. You told me about an occasion that happened you said in Jacob's room; right? A. Yeah.

> Q. When Jacob was there? A. Yeah.

> Q. And you told me that you didn't even think that you got touched on that occasion. Remember that? A. No.

"[W]hen an impeached witness denies making a prior inconsistent statement, it is firmly established that even the slightest suggestion of fabrication, improper influence or motive, triggers the rule and allows the admission of a witness' prior consistent statement." *State v. Gardner*, 490

N.W.2d 838, 840 (Iowa 1992), *overruled on other grounds by Johnson*, 539 N.W.2d 160.

Defense counsel additionally cross-examined H.N. as to why she never mentioned "to those people that wanted to help you" at CPC that Fontenot rubbed her legs when she was around seven years old while on a camping trip. He similarly questioned H.N. at length about why she didn't report the abuse earlier to her mother:

> Q. And, [H.N.], how do you feel about your mother? A. I love her.
>
> Q. And your mother loves you; right? A. Yes.
>
> Q. And she would not hesitate to protect you, would she? A. Yeah.
>
> Q. She would? A. No, she would not.
>
> Q. All right. And there she is coming right into the room right when this is happening, and you could have said, Mom, Tim is doing this to me? A. Yeah.
>
> Q. And there would be no reason for you to not say that? A. Yeah.
>
> Q. I'm sorry? A. Yeah.
>
> Q. If it had actually happened. A. It did.
>
> Q. So why didn't you tell your mother?

There is a strong implication a witness has fabricated on the stand when cross-examination inquires at length into why the witness delayed in telling others details of a crime. *See, e.g., Young*, 105 F.3d at 9 (finding cross-examination implied fabrication by highlighting that the witness delayed in telling certain observations to others); *State v. Saltz*, 551 S.E.2d 240, 246–47 (S.C. 2001) (finding a charge of recent fabrication when defense counsel highlighted the witness did not come forward with information until thirteen days before trial); *Commonwealth v. Thomas*,

706 N.E.2d 669, 680 (Mass. 1999) (finding cross-examination "strongly implied" fabrication by inquiring into why the witness had not immediately informed police on certain details).

The dissent claims defense counsel did not make an implied charge of recent fabrication. If we were to adopt the dissent's position in this case, then the rule might as well be changed to requiring an express charge of recent fabrication because all that was left for defense counsel to do was outright ask, "and isn't it true you are fabricating on the stand?" The dissent cites *Taylor v. State*, 855 So. 2d 1, 23 (Fla. 2003) (per curiam) to support its argument. However, a closer look at the facts of *Taylor* shows this case actually supports the majority's finding of a charge of recent fabrication.

In *Taylor*, a police officer testified to a statement the defendant told him. *Id.* at 22. The Florida Supreme Court found an implicit charge of recent fabrication had not been made on cross-examination because "the questioning dealt with the proper preparation of police reports and the observation that Noble's written report did not contain Taylor's statement." *Id.* at 23. Thus, the line of questioning did not imply the officer was fabricating on the stand but rather implied "police attempts to identify a perpetrator were sloppy and incomplete." 4 Clifford S. Fishman & Anne T. McKenna, *Jones on Evidence* § 26:38 (7th ed. 2020). Thus, our finding that defense counsel implied recent fabrication in the present case when he repeatedly implied H.N. was fabricating on the stand is not at odds with *Taylor*'s holding.

The dissent also cites *Jones v. State*, 439 P.3d 753 (Wyo. 2019), to support its position that defense counsel never implied recent fabrication. *Jones* additionally supports the majority's position. The Wyoming Supreme Court affirmed a district court's admission of children's forensic

interviews as prior consistent statements although there were "additional detail[s]" and "variation" because "the gist of the prior consistent statements is that they address the incidents of alleged sexual abuse that are alleged in the six counts in this case." *Id.* at 757. The court found defense counsel implied a charge of fabrication or improper influence during cross-examination of the children when "[q]uestions related to conversations they had with others" about the alleged sexual abuse, whether anyone helped them prepare to testify, and the timing of when a photograph was shown to one of the children in which she alleges the abuse was pictured occurring. *Id.* at 762. In the present case, defense counsel was arguably even more express in his charges of fabrication. For these reasons, we determine defense counsel implied a charge of recent fabrication in his cross-examination of H.N.

**C. Consistency.** Although it is not clear, Fontenot possibly challenges the requirement that the prior statement must be consistent with the declarant's challenged testimony. The vast majority of H.N.'s trial testimony is consistent and corroborative with her statements in the CPC video. For example, defense counsel went to great lengths to imply H.N. fabricated her testimony that Fontenot first rubbed her legs when she was six or seven on a camping trip. Although not described as occurring on a camping trip, she similarly told the CPC interviewer Fontenot first started touching her when she was seven by rubbing her legs before it progressed to rubbing on her private spot when she was ten. In addition, defense counsel expressly charged she fabricated the abuse she testified happened in her bedroom during the day. However, she discusses this specific incident of abuse in the CPC video.

Fontenot asserted H.N. couldn't remember in her deposition whether Fontenot had touched her on the couch while her brother was

playing video games. She speaks directly to this incident in the CPC video and states he touched her. He noted that in her deposition, she couldn't remember whether Fontenot's fingers ever went inside of her vagina, in contrast to her trial testimony. She states in the video his fingers went inside of her. Consistent with her trial testimony, she additionally discusses in the video how Fontenot bought her UGG boots and a cell phone plan as a way to touch her more, would flip her and E.M. and touch them inappropriately, would put a blanket over her body to touch her, and would go underneath her shorts to touch her.

The dissent's reliance on *United States v. Kenyon*, 397 F.3d 1071, is also misplaced. We agree with the dissent's explanation of the factual scenario in *Kenyon*. The child testified and said certain details about the abuse for the first time ever on the stand. *Id.* at 1080. The court of appeals held the district court erred by allowing a physician's assistant to testify to the child's prior statements about other different details. *Id.* This is not the same scenario as the present case.

As discussed above, almost every detail of H.N.'s testimony that defense counsel impeached is corroborated by her statements in the CPC video. Furthermore, *Kenyon* asserts the physician's assistant's testimony would have been properly admitted as a prior consistent statement if defense counsel had presented evidence that the child omitted certain details during an "intervening" grand jury appearance that she then testified to at trial. *Id.* In that regard, *Kenyon* is directly on point, as defense counsel impeached H.N. by presenting evidence of omissions in an intervening deposition.

There are details in the CPC video that were not discussed by H.N. at trial as well as two clearly inconsistent statements. Fontenot points out, for example, that at trial H.N. testified Fontenot did not touch her

breasts but in the CPC video states that he did place his hand under her sports bra and touched her "private spot up here." Additionally, H.N. states in the CPC video Fontenot touched his penis when he touched her but at trial testified he used one hand when he touched her and that she did not know what he did with his other hand.

These inconsistencies do not detract from the fact that the CPC video is, on the whole, consistent with H.N.'s trial testimony. Fontenot did not object to the admission of portions of the video; his objection was all or nothing.

In any event, we presume the admission of hearsay that does not fall within an exception is prejudicial to the nonoffering party unless otherwise established. *State v. Dullard*, 668 N.W.2d 585, 589 (Iowa 2003). Although prior consistent statements are admissible for the truth of the matter asserted, in this case, the district court included a jury instruction that informed the jury that as to statements not made under oath, "you may only use the statement as a basis for disregarding all or any part of the witness's testimony." We presume jurors follow instructions. *State v. Sanford*, 814 N.W.2d 611, 620 (Iowa 2012).

The State contends it was to Fontenot's benefit that none of the statements in the CPC video came in as substantive evidence and he was not prejudiced by the few inconsistent statements it contained. We agree. Rather than bolster H.N.'s credibility to the jurors, these inconsistent statements more likely casted doubt on her credibility in the CPC video. Contrary to the CPC interview, H.N. testified at trial that Fontenot had not touched himself in her presence or touched her breasts.[1]

---

[1]Fontenot also benefited from the district court's decision to have the redacted deposition read aloud to the jury. Thus, the jury had everything before it: H.N.'s trial testimony, where she was vigorously cross-examined; H.N.'s original video interview; and H.N.'s deposition.

Furthermore, because these statements were video recorded, the jury was better able to assess H.N.'s credibility as to the statements. The CPC interviewer asked open-ended, nonleading questions the vast majority of the interview. However, at trial, the jury could see for themselves that H.N.'s answers resulting in these two particular inconsistent statements were in response to more leading and less open-ended questions. For example, the interviewer asked H.N. several times what Fontenot's other hand was doing when he touched her with his one hand, and H.N. said it was not doing anything or she was unsure. It was only after the interviewer asked H.N. if Fontenot's other hand touched any other part of her body that H.N. stated Fontenot would also touch her under her sports bra. Later in the conversation, the interviewer asked H.N. if Fontenot "ever touched his penis in front of you," and H.N. responded in the negative. The interviewer again asked, "Did you ever accidentally see him touch his penis?" This time H.N. replied, "He's tried to . . . . so when he touches me he touches his penis." It seems more likely the admission of these statements were more injurious to the State than to Fontenot because of the context they arose from in the video and because H.N. testified at trial there was "no doubt" in her mind Fontenot never touched her breasts and that she did not know if he did anything with his other hand when he touched her.

Admittedly, the statements in the CPC video including additional details not discussed in H.N.'s trial testimony have no probative value as prior consistent statements. For example, defense counsel made a motion for mistrial after the video was played because H.N. told the CPC interviewer in the video that Fontenot had photos of girls in small bikinis on his cell phone. The district court stated that in the grand scheme it was not prejudicial to Fontenot and noted defense counsel had months to

review the CPC video and file a motion in limine to redact certain portions. *See Gardner*, 490 N.W.2d at 842 ("Defendant did not request the court to preview the tape prior to admission . . . . This could have been cured by a request to limit play-back to the one relevant question. Defendant did not request the trial court to limit the presentation in this manner; consequently, he has not preserved a claim of error."), *overruled on other grounds by Johnson*, 539 N.W.2d 160. Defense counsel requested a redaction for the deposition, yet decided against requesting any redactions for the video.[2] Furthermore, defense counsel discussed at length on cross-examination one of the few additional incidents of abuse H.N. only discussed in the CPC video.

A reversal is required for improper admission of evidence if the admission affected a substantial right of a party. *State v. Neiderbach*, 837 N.W.2d 180, 205 (Iowa 2013). As discussed above, the prejudicial effects of the additional details in the CPC video were not considered by the jury as substantive evidence of Fontenot's guilt. Furthermore, we do not think the particular additional detail objected to at trial prejudiced Fontenot—H.N. clearly stated in the video Fontenot never asked her for inappropriate photos nor sent her any, and she reiterated that in her testimony. We conclude the jury's viewing of additional or inconsistent details in the video was harmless in this case.

The dissent cites *J.D.W. v. State*, 176 So. 3d 863 (Ala. Crim. App. 2014), an Alabama Court of Appeals child sexual abuse case, to argue the

---

[2]Defense counsel stated to the district court after his cross-examination,

> I asked her about her CPC tape. That doesn't make the entire thing admissible. If anything, I should be able to pick the parts that I want to play to show the inconsistencies that would be admissible under prior inconsistent statements, but I'm not seeking to do that because we all know what happens here if we let the jury have the CPC tape, that it enforces and bolsters her testimony and the claims that she makes.

CPC video should not have been admitted because it contains additional details of abuse. *J.D.W.* is distinguishable from this case. In *J.D.W.*, the State called a forensic interviewer to testify to incidents the child "was not able to recall on the stand but apparently had discussed in her forensic interview." *Id.* at 869. The child had testified to four incidents of abuse. *Id.* at 865. The forensic interviewer then testified to other incidents of abuse. *Id.* at 867. This is a completely different factual scenario than the present case.

Here, the CPC video was admitted because defense counsel implied H.N. had fabricated her testimony and impeached her testimony with inconsistent statements in her deposition. The vast majority of H.N.'s trial statements have a companion consistent statement in the video, unlike in *J.D.W.* where the forensic interviewer testified about incidents of sexual abuse that were wholly absent from the victim's testimony. Furthermore, Alabama's rules lend more support to the majority's position that the video should be admitted. Alabama allows introduction of evidence in sexual offense cases "for the purpose of corroborating the victim's testimony on direct examination as to the details of the crime, as to which the victim has been subjected to cross-examination calculated to reflect upon her credibility as a witness." *Lee v. State*, 565 So. 2d 1153, 1154 (Ala. 1989) (quoting *Cady v. State*, 455 So. 2d 101, 105 (Ala. Crim. App. 1984)) (allowing witnesses to testify to conversations with child after defense counsel's cross-examination had the "apparent purpose of reflecting upon the child's credibility as a witness").

Defense counsel opened the door for admission of the CPC video during his cross-examination of H.N. when he repeatedly implied she was fabricating. H.N.'s first statement in her CPC interview occurred before counsel took her second statement during a deposition and before trial

where defense counsel first alleged H.N. changed or fabricated her testimony at trial or in her deposition. Thus, the video occurred before defense counsel alleged H.N. was changing or fabricating her story and is admissible as a prior consistent statement. Therefore, we need not address whether the video would have been admissible on any other ground.

## IV. Conclusion.

For the reasons discussed above, we affirm Fontenot's conviction.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Waterman, Mansfield, and McDermott, JJ., join this opinion. McDonald, J., files a dissenting opinion in which Appel and Oxley, JJ., join.

**McDONALD, Justice (dissenting).**

Defense counsel impeached H.N.'s trial testimony with inconsistent statements from her forensic interview. H.N. testified at trial that the first time Fontenot did anything bad to her was on a camping trip, but defense counsel impeached her with her forensic interview during which H.N. did not discuss any camping trip. H.N. also testified at trial that Fontenot did not touch her breasts, but defense counsel impeached her with her forensic interview during which H.N. reported Fontenot touched her breasts. The majority concludes the forensic interview used as a prior inconsistent statement to impeach H.N. was actually a prior consistent statement admissible to rebut a charge of recent fabrication. This makes no sense. I dissent.

I.

To assess whether there was prejudicial evidentiary error, it is first necessary to put this case into context. This jury did not view the State's case as strong. The jury found Fontenot guilty on only two of the six counts charged. Clearly, the jury found much of H.N.'s trial testimony not credible, which makes the evidentiary issue in this case of critical importance.

Fontenot was charged with two counts of indecent contact with a child, with E.M. To prove these charges, the State was required to prove the defendant "with or without E.M.'s consent touched the clothing covering the immediate area of the inner thigh, groin, buttock, or anus of E.M." and the defendant "did so with the specific intent to arouse or satisfy the sexual desires of the [d]efendant or E.M." Both E.M. and H.N. testified at trial that the defendant touched E.M. over her clothing in her private

spot, but the jury rejected their testimony and acquitted Fontenot of the charges.

Fontenot was charged with two counts of sexual abuse in the second degree against H.N. The jury was instructed the State was required to prove the defendant committed a sex act with H.N. and she was under the age of twelve years. "Sex act" was defined to include any sexual contact "[b]etween the finger or hand of one person and the genitals or anus of another person." H.N. testified the defendant put his hand underneath her underwear and touched her private spot. She testified he digitally penetrated her. When the prosecutor asked H.N. how many times the defendant touched her in her "private area" underneath her clothing, H.N. testified, "More than I can count." Despite H.N.'s explicit testimony regarding these charges, the jury was not convinced and deadlocked on the two counts of sexual abuse in the second degree. The district court ultimately dismissed the charges on the State's motion.

Fontenot was also charged with two counts of indecent contact with a child, H.N. To prove these charges, the State was required to prove the defendant "with or without H.N.'s consent touched the clothing covering the immediate area of the inner thigh, groin, buttock, or anus of H.N." and the defendant "did so with the specific intent to arouse or satisfy the sexual desires of the [d]efendant or H.N." In her forensic interview, H.N. reported Fontenot touched her above her clothing in her private areas. She also testified at trial that Fontenot touched her above her shorts or underwear more times than she could count. The jury found Fontenot guilty of these two charges.

Was the jury's finding of guilt based on the conduct H.N. reported in the forensic interview or based on H.N.'s trial testimony? That is unknown. But the answer to that question is not necessary to resolve this

case. When the district court erroneously admits hearsay statements into evidence, "[w]e presume prejudice—that is, a substantial right of the defendant is affected—and reverse unless the record affirmatively establishes otherwise." *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006) (emphasis removed) (quoting *State v. Sullivan*, 679 N.W.2d 19, 30 (Iowa 2004)). As discussed below, the district court's decision to admit the entirety of the forensic interview into evidence was erroneous, and the record does not affirmatively establish the error was not prejudicial.

## II.

The general rule is that an out-of-court statement consistent with the declarant's in-court testimony is not admissible as substantive evidence or to enhance the declarant's credibility. This is because the "weak probative value of consistent statements evidence is deemed insufficient to overcome its prejudicial impact in terms of Rule 5.403 considerations." 7 Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.801:7, at 902 (2020–2021 ed. 2020) [hereinafter Doré]. As this record demonstrates, "the circumstances surrounding the prior declaration may lead to confusion of issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence." *Id.* n.2. Further, the focus of a criminal jury trial should be witness testimony, delivered under oath, in front of the jury, in the defendant's presence, subject to the defendant's cross examination, and not litigation by "prior prepared statements." *Id.* § 5.801:7, at 902 (quoting Fed. R. Evid. 801(d)(1)); *see Crawford v. Washington*, 541 U.S. 36, 43, 124 S. Ct. 1354, 1359 (2004) ("The common-law tradition is one of live testimony in court subject to adversarial testing . . . ."). Thus, a strong preference for live testimony undergirds the rules of evidence, and exceptions thereto should be administered with great caution.

Against this traditional background, Iowa Rule of Evidence 5.801(*d*)(1)(B) provides a narrow exception to the hearsay rule that permits admission of hearsay evidence in limited and highly focused circumstances.[3] Iowa Rule of Evidence 5.801(*d*)(1)(B) provides that a prior statement is not hearsay and is admissible as substantive evidence if:

> [t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement: . . . [i]s consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying . . . .

As the text of the rule suggests, the rule is not a crude weapon to shotgun-blast bolstering hearsay into the record when a defense lawyer exploits inconsistencies through effective cross-examination. Instead, it is a precision rifle to rebut a specific claim that the declarant recently fabricated specific testimony or acted from a recent improper influence or motive in testifying. The majority disregards the narrow nature of the exception and instead takes a shotgun-blast approach to the rule, holding that the entirety of the CPC interview was admissible as a prior consistent statement under rule 5.801(*d*)(1)(B). I disagree with this indiscriminate approach.

---

[3]The caselaw repeatedly emphasizes the narrowness of the prior-consistent-statement exception to the hearsay rule. *See, e.g., Kitchings v. State*, 291 So. 3d 181, 196 (Fla. 2020) ("[U]se of a prior consistent statement is narrowly circumscribed . . . ."); *People v. Wiggins*, 40 N.E.3d 1197, 1204 (Ill. App. Ct. 2015) (recognizing "the narrow exception for prior statements used to rebut an inference that the witness recently fabricated the testimony"); *Commonwealth v. Cruz*, 759 N.E.2d 723, 731 (Mass. App. Ct. 2001) (stating that "[p]rior consistent statements" are only "allowable under [a] narrow hearsay exception"); *People v. Harris*, 662 N.Y.S.2d 965, 966 (App. Div. 1997) ("There is a narrow exception, which permits proof of prior consistent statements to rebut a claim of recent fabrication."; (citations omitted)) *State v. Midgett*, 680 N.W.2d 288, 293 (S.D. 2004) ("This hearsay exception is . . . rather narrow."); *Faison v. Hudson*, 417 S.E.2d 305, 309 (Va. 1992) (recognizing "a few narrowly circumscribed exceptions" to the general rule excluding prior consistent statements).

A.

First, it is questionable whether defense counsel's cross-examination constituted a charge of improper motive or recent fabrication. Defense counsel's examination of H.N. was rigorous, and he impeached her credibility with numerous prior inconsistent statements. This, in and of itself, does not constitute a charge of motive to lie or recent fabrication. *See Taylor v. State*, 855 So. 2d 1, 24 (Fla. 2003) (per curiam) (holding that questioning deputy regarding omissions in report was not a charge of recent fabrication and stating the admission of prior statements "served to improperly bolster [the deputy's] credibility regarding his trial testimony" and was error); *People v. McWhite*, 927 N.E.2d 152, 157 (Ill. App. Ct. 2010) ("However, the mere introduction of contradictory evidence, without more, does not constitute an implied charge of fabrication or motive to lie."); *Commonwealth v. Bruce*, 811 N.E.2d 1003, 1009 (Mass. App. Ct. 2004) ("Contrary to the belief of the judge below, the impeachment of a witness by prior inconsistent statements or omissions does not, standing alone, entitle the adverse party to introduce other prior statements made by the witness that are consistent with his trial testimony."); *Jones v. State*, 439 P.3d 753, 761 (Wyo. 2019) ("A defense to crimes such as those at issue here will necessarily entail a defense theory that what the victim said happened did not happen. That alone does not open the door for admission of prior consistent statements."); Doré, *Iowa Practice Series: Evidence* § 5.801:7, at 905 ("[T]he rule does not permit prior consistent statements merely to rebut a charge that the witness is not credible because the witness has made inconsistent statements.").

It has been repeatedly held that mere presentation at trial of conflicting testimony or statements made by a witness does not imply fabrication. *See Moore v. Anchor Org. for Health Maint.*, 672 N.E.2d 826,

834 (Ill. App. Ct. 1996) ("We know of no case which stands for the proposition that the mere introduction of contradictory evidence constitutes, without more, an implied charge of fabrication. In fact, the contrary is true."); *State v. Jones*, 841 So. 2d 965, 975–76 (La. Ct. App. 2003) ("The mere fact of a prior inconsistent statement is insufficient . . . there must have been an express or implied suggestion that the witness changed his story because of some purported motive to falsify." (quoting George W. Pugh et al., *Handbook on Louisiana Evidence Law* 485–86 (2000))). As noted by one appellate court, "just because evidence is introduced that contradicts a witness' in-court testimony or because a witness [has been] impeached, it does not necessarily follow that there has been a charge of recent fabrication." *People v. Miller*, 706 N.E.2d 947, 952 (Ill. App. Ct. 1998) (citations omitted). Similarly, the Supreme Court of Virginia has declared: "[T]o allow the admission of a prior consistent statement after impeachment of just 'any sort' would create an unreasonably 'loose rule.' " *Faison*, 417 S.E.2d at 310.

## B.

Second, the State did not identify the specific questions posed by defense counsel that charged H.N. with improper motive or recent fabrication, and the district court did not make a finding of improper motive or recent fabrication. It was improper to allow the evidence without the proponent specifically identifying the charge and the district court making a finding regarding the same. *See Tome v. United States*, 513 U.S. 150, 166, 115 S. Ct. 696, 705 (1995) ("[T]he thing to be rebutted must be identified . . . ."); *United States v. Lozada-Rivera*, 177 F.3d 98, 104 (1st Cir. 1999) ("[T]he proponent of evidence must point to specific questions during his adversary's examination that suggest recent fabrication or bias. Merely appealing to credibility as a live issue will not do the trick."); Doré, *Iowa*

*Practice Series: Evidence* § 5.801:7, at 904 (stating the district court must make a preliminary finding "that a charge of recent fabrication or improper influence or motive has been leveled against the testifying witness"). Prior consistent statements should not be admitted in the absence of a preliminary finding of improper motive or recent fabrication.

These preliminary requirements are necessary to effectively administer the rule within the intended scope. The dangers of failing to comply with these preliminary requirements are demonstrated in the majority opinion. The majority is caught in a dilemma. The majority concludes in division III, section A that the charge of recent fabrication or improper motive is not that H.N. "had fabricated the entire story." If the majority concluded otherwise, then the forensic interview would not have been made before the alleged motive to fabricate or improper influence arose and would be inadmissible under the rule. *See State v. Johnson,* 539 N.W.2d 160, 164 (Iowa 1995) ("[A] witness's prior consistent statement is admissible as nonhearsay to rebut a charge of recent improper motive . . . *only if* the statement was made before the alleged improper motive to fabricate arose."); *see also Tome,* 513 U.S. at 158, 115 S. Ct. at 701 ("[T]he consistent statements must have been made before the alleged influence, or motive to fabricate, arose."); *Miller,* 706 N.E.2d at 952 (allowing exception provided "that the prior consistent statement was made before the motive to fabricate arose"); *Harris,* 662 N.Y.S.2d at 966–67 ("[F]or that exception to apply, the prior consistent statement must have predated the motive to falsify." (citations omitted)); *Midgett,* 680 N.W.2d at 294 ("Because the statements were made after the alleged motive to fabricate arose, they were not probative to corroborate [the] trial testimony."). The majority thus concludes defense counsel "implied H.N. was changing or fabricating her story on the stand." But the majority never specifically

identifies how or in what respect. This is because the forensic interview does not actually rebut the charge of recent fabrication or improper motive with respect to any of the specifically challenged parts of H.N.'s testimony. The majority does not deny this. Instead, the majority concludes the evidence was admissible because the majority of H.N.'s testimony was consistent with her forensic interview. In the majority's view, because the forensic interview contains allegations of sex abuse and H.N. testified to sex abuse, the charge of recent fabrication or improper motive is rebutted. This would only be true (if at all) if the charge of recent fabrication or improper motive was that H.N. had fabricated the entire story. But the majority rejects that as a basis for admission of the forensic interview.

In short, to find the forensic interview occurred prior to the charge of recent fabrication, the majority finds defense counsel charged only that H.N. changed specific parts of her story, but to find the forensic interview was consistent, the majority looks to the interview and testimony as a whole because the forensic interview admittedly does not actually rebut the charge of recent fabrication or improper motive with respect to the testimony actually challenged.

The requirements that the proponent identify the charge and that the court make specific findings regarding the same are meant to prohibit jumping between these levels of generality to game the rule. *See Tome*, 513 U.S. at 157–58, 115 S. Ct. at 701 ("Prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited. . . . The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told."). There must be a link "between the prior consistent statement," the charge of improper motive or recent fabrication, and the "particular type of impeachment that has occurred." *United States v. Butler*, ARMY

20180385, 2020 WL 2844500, at \*4 (A. Ct. Crim. App. May 29, 2020) (quoting *United States v. Finch*, 79 M.J. 389, 396 (C.A.A.F. 2020)). The prior consistent statement to be introduced must be "an appropriate, narrowly tailored, and logically relevant response to a specific attack on the witness's credibility." *State v. White*, 977 A.2d 501, 505 (N.H. 2009) (quoting *State v. Fischer*, 725 A.2d 1, 4 (N.H. 1999)). Consistency at a high and superficial level of generality is insufficient to warrant admission of an out-of-court statement offered for the truth of the matter asserted to rebut a specific charge of recent fabrication or improper motive.

### C.

Third, even assuming these preconditions to admissibility had been met, the entirety of the CPC interview was not relevant to the grounds for impeachment and should not have been admitted.

Consider, for example, H.N.'s testimony regarding the first incident of alleged sexual abuse. The prosecutor asked H.N. when the first time "something bad" happened. H.N. testified the first time was "in Minnesota when we were camping." She testified "we were having like a bonfire, and we went into the camper, and he like pulled out the couch. And I was laying in the bed, and he like started rubbing my leg." On cross-examination, defense counsel then impeached H.N. by omission. He asked H.N. why she had not "mention[ed] any camping trip in Minnesota" during her CPC interview, and she replied, "I thought I did." Defense counsel then asked her why she had not mentioned the camping trip during her deposition, and she replied, "I thought I did." But she did not. H.N. told the CPC interviewer the first time anything bad happened was in her home when she was sitting on her bed. H.N. never mentioned any camping trip in Minnesota during the CPC interview.

The fact that H.N. never mentioned the camping trip in Minnesota means the CPC interview was not relevant to rebut the charge of improper motive or recent fabrication as to this point. As one court correctly explained:

> On the other hand, rehabilitating the credibility of the declarant may require something more precisely related to explaining or rebutting the specific manner of the attack on the witness' credibility. For example, if the declarant's credibility is attacked on another ground such as impeachment by omission because she testified to new information not previously mentioned in other statements, admitting a prior statement that is devoid of the fact now at issue, is not actually consistent with the testimony attacked and does little to rehabilitate the declarant's credibility based on the specific type of attack.

*United States v. Norwood*, 79 M.J. 644, 655 (N-M. Ct. Crim. App. 2019), *aff'd in part, rev'd in part*, 79 M.J. 644 (C.A.A.F. 2021) (citations omitted). As another court explained, "In each instance where admission is sought, the trial court must begin by determining whether the prior statement is actually relevant 'to rebut an express or implied charge . . . of recent fabrication or improper influence or motive . . . .' " *Nitz v. State*, 720 P.2d 55, 68 (Alaska Ct. App. 1986) (omissions in original) (quoting Alaska Rule of Evidence 801(d)(1)(B)). The rule "seems an inappropriate basis to admit proof of statements that are consistent with other parts of testimony that have not been attacked." 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:38, Westlaw (4th ed. May 2020 Update) [hereinafter Mueller & Kirkpatrick].

With respect to this ground for impeachment, this case is similar to *United States v. Kenyon*, 397 F.3d 1071 (8th Cir. 2005). In that case, the defendant was convicted of three counts of sexual abuse against a child. *See id.* at 1074. At trial, the child testified that the last instance of abuse

occurred the week prior to the time she told a physician's assistant about the abuse. *See id.* at 1075. The child testified the defendant had performed some acts of sexual abuse on her during the day and had attempted to force her to have oral sex. *See id.* at 1080. On cross-examination, defense counsel impeached the child by omission, questioning the child on why she had not told the physician's assistant about incidents of sexual abuse occurring during the day and about attempted oral sex. *See id.* Over the defendant's objection, the district court allowed the physician's assistant to testify about her conversation with the child as a prior consistent statement. *See id.* at 1079. The court of appeals concluded it was error to allow the physician's assistant to testify because she "did not present evidence of a prior consistent statement with respect to the matters on which [the child] was impeached. The whole point of the impeachment was that [the child] did not describe daytime abuse and attempted oral sex to [the physician's assistant]." *Id.* at 1080. The court vacated the convictions. *See id.* at 1082. The same result should obtain here.

In addition, the entire CPC interview should not have been admitted because statements contained therein were directly contrary to H.N.'s trial testimony. For example, on direct examination, H.N. testified the defendant never touched her breasts. Defense counsel challenged this testimony. He impeached her with her prior inconsistent statement made during the CPC interview. During the CPC interview, H.N. stated the defendant put his hand up her shirt and under her sports bra and touched her breasts. A statement cannot be admitted as a prior consistent statement to rebut a charge of recent fabrication where it is directly contrary to the challenged testimony. *See J.D.W. v. State*, 176 So. 3d 863, 869 (Ala. Crim. App. 2014) (holding testimony of forensic interviewer was

not admissible as prior consistent statement where "testimony regarding [the child's] statements during the forensic interview was inconsistent— not consistent—with [the child's] trial testimony"); *State v. Gell*, 524 S.E.2d 332, 340 (N.C. 2000) ("However, the State may not introduce as corroboration prior statements that actually, directly contradict trial testimony.").

Finally, the CPC interview contained statements regarding alleged abuse that H.N. did not testify to at trial. Those statements are not prior consistent statements and should not have been admitted. *See United States v. Campbell*, ARMY 20180107, 2020 WL 1150267, at *5 (A. Ct. Crim. App. Mar. 6, 2020) ("Only those portions of a witness's prior statement that are consistent with the witness's courtroom testimony may be deemed admissible at trial." (emphasis omitted) (quoting *Finch*, 79 M.J. at 391)). As one treatise explains, the rule allows admission of prior consistent statements to repair a specific form of attack on a testifying witness's credibility; the rule was not intended to allow admission of evidence that expands the trial testimony:

> Yet this mechanism of repair was never intended to allow such statements to prove points omitted from trial testimony, and an important common law tradition holds that such statements cannot go beyond what the witness has said in her trial testimony . . . . This tradition is critical to proper application of [the federal rule], and it requires judges and adverse parties to keep a watchful eye on counsel offering such statements under the amended rule.

4 Mueller & Kirkpatrick, *Federal Evidence* § 8:38 (emphasis omitted).

In this respect, this case is similar to *J.D.W. v. State*. In that case, the State called a forensic interviewer to testify to prior consistent statements the child made during a forensic interview to rebut a charge of recent fabrication. *See J.D.W.*, 176 So. 3d at 866. The court allowed the

testimony over the defendant's objection. *See id.* at 867. The court of criminal appeals concluded this was error. *See id.* at 869. The court reasoned that the forensic interviewer's testimony was not consistent with the child's testimony because the forensic interviewer discussed other incidents of abuse to which the child did not testify. *See id.* at 869 ("Likewise, on appeal, the State continues to argue that Wilbourn's testimony regarding R.W.'s forensic interview was consistent with R.W.'s trial testimony; the State's argument, however, is belied by its recognition that Wilbourn's testimony included 'other incidents of abuse' about which R.W. 'could not recall specific details.' "). Like the testimony in *J.D.W.*, the CPC interview contains allegations of abuse outside the scope of H.N.'s trial testimony and should not have been admitted as a prior consistent statement. *See* 4 Mueller & Kirkpatrick, *Federal Evidence* § 8:38 ("What seems important is that the exception should not become the means by which a party can prove new points not covered in the testimony of the speaker.").

The upshot is this: for evidence to be admitted as a prior statement to rebut a charge of recent fabrication, the prior statement must be relevant with respect to the matter or matters on which the witness was impeached and must actually be consistent with the challenged testimony. If the prior statement does not satisfy these conditions, then the evidence is not relevant. On this basis, I conclude admission of the entire CPC interview was erroneous and prejudicial.

### III.

The State contends even if the entire forensic interview was not admissible as a prior consistent statement, the district court properly admitted the evidence under the residual exception contained in Iowa Rule

of Evidence 5.807 or the child hearsay statute codified at Iowa Code section 915.38(3) (2018). I respectfully disagree.

The residual hearsay exception is "used very rarely, and only in exceptional circumstances." *State v. Veverka*, 938 N.W.2d 197, 199 (Iowa 2020) (quoting *State v. Brown*, 341 N.W.2d 10, 14 (Iowa 1983) (en banc)). Under the rule, the proponent must establish the following:

> (1) The statement has equivalent circumstantial guarantees of trustworthiness;
>
> (2) It is offered as evidence of a material fact;
>
> (3) It is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>
> (4) Admitting it will best serve the purposes of these rules and the interests of justice.
>
> b. *Notice.* The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement . . . .

Iowa R. Evid. 5.807.

In *State v. Rojas*, we explained the residual hearsay exception standard as follows: "The requirements for admissibility under the residual exception are five-fold: trustworthiness, materiality, necessity, service of the interests of justice, and notice." 524 N.W.2d 659, 662–63 (Iowa 1994). In that case, the issue was whether a videotaped interview of a child's allegations of sexual abuse could be admitted when the child recanted the statements at trial. *See id.* at 661. We held the video was admissible under rule 803(24) (now rule 5.807), the residual hearsay exception. *See id.* at 664. We held that the video was trustworthy, material, necessary, and served the truth-seeking function of justice because in it the child recounted graphic details in response to nonleading, open-ended

questions about the sexual abuse and surrounding circumstances. *See id.* at 663–64.

In *State v. Neitzel*, the court of appeals admitted video evidence of a child's prior statements under the residual hearsay exception. 801 N.W.2d 612, 622–23 (Iowa Ct. App. 2011). There, the one incident of abuse occurred three years prior to trial when the child was seven years old and the child no longer had memory of what occurred. *See id.* at 623 ("The admission of the evidence was necessary because T.K. was of a young age when the abuse occurred and unable to testify to the abuse at trial years later . . . .").

Unlike *Rojas* and *Neitzel*, there is no showing of necessity here. For necessity, the State must show the evidence is "more probative . . . than any other evidence that the proponent can obtain through reasonable efforts." Iowa R. Evid. 5.807(*a*)(3). Here, H.N., was a teenager at the time of trial. *Cf. Neitzel*, 801 N.W.2d at 623 (noting there was necessity because the child was young). H.N. was able to testify regarding the specific allegations of abuse in great detail. *Cf. id.* (noting the child was unable to testify). Unlike the child in *Rojas*, H.N. did not recant her allegations of sexual abuse. *Cf. Rojas*, 524 N.W.2d at 661; *State v. Kone*, 562 N.W.2d 637, 638 (Iowa Ct. App. 1997) (finding necessity where witness "later recanted her statements made in the interview, [and] the admission of the tape was the only means by which the State could introduce the information it had received from" the witness). Where the witness can testify to the allegations of abuse there is "no basis for concluding that this evidence was necessary for the State's case." *State v. Metz*, 636 N.W.2d 94, 100 (Iowa 2001).

The State also contends the video is admissible under Iowa Code section 915.38(3), which allows admission of recorded statements of child

sex abuse victims into evidence if the statements "substantially comport" with the requirements of the residual hearsay exception.

> The court may upon motion of a party admit into evidence the recorded statements of a child, as defined in section 702.5, describing sexual contact performed with or on the child, not otherwise admissible in evidence by statute or court rule if the court determines that the recorded statements substantially comport with the requirements for admission under rule of evidence 5.803(24) or 5.804(*b*)(5).

Iowa Code § 915.38(3). This court has not determined what "substantially comport" means. I would hold a recorded statement does not substantially comport with the requirements for admission under the residual exception where there is no showing of necessity, as is the case here. For this reason, I would conclude the forensic interview was not admissible under section 915.38(3).

### IV.

As the jury verdict reflects, this was a close case. The jury acquitted the defendant of two charges against E.M. to which E.M. and H.N. both testified. The jury could not conclude the State proved its case with respect to the most serious charges of sex abuse against H.N. despite her testimony regarding more instances of sex abuse than she could count. The jury did convict Fontenot of the less serious charges of indecent contact with a child involving H.N., but the basis for that verdict is unknown. "In a case of nonconstitutional error, 'we presume prejudice—that is, a substantial right of the defendant is affected—and reverse unless the record affirmatively establishes otherwise.'" *State v. Buelow*, 951 N.W.2d 879, 890 (Iowa 2020) (quoting *Sullivan*, 679 N.W.2d at 30). I conclude there was evidentiary error here, and the record does not affirmatively establish the lack of prejudice. I would vacate the defendant's convictions and remand this matter for new trial.

Appel and Oxley, JJ., join this dissenting opinion.